# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JARITA HICKS, on behalf of all others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) ) | **Case No. _____** |
| **v.** | ) ) ) | **Removal from the Circuit Court of Cook County, Illinois** |
| **EVERGREEN LIVING & REHAB CENTER, LLC d/b/a THE VILLA AT EVERGREEN PARK and AVANTARA EVERGREEN PARK,** | ) ) ) ) | **Case No.: 2020CH04423** |
| **Defendant.** | | |

**DECLARATION OF KEVIN MCINERNEY IN SUPPORT
OF DEFENDANT'S NOTICE OF REMOVAL**

I, Kevin McInerney, hereby declare and state as follows:

1.      This Declaration is based on my personal knowledge of the facts and/or my access to and review of business records maintained by defendant Evergreen Living & Rehab Center ("Evergreen") in the ordinary course of its business. If called upon to testify, I could testify competently to each fact.

2.      My title is Chief Personnel Officer & Government Affairs. I have held this position since February 2017.  My duties include, *inter alia*, overseeing grievances and handling collective bargaining for Evergreen. I have custody and control of historical records relating to the SEIU Healthcare Illinois & Indiana ("SEIU" or the "Union"), including collective bargaining agreements ("CBA") between SEIU and Evergreen.

3.      Plaintiff Jarita Hicks ("Hicks") was employed as a Certified Nursing Assistant ("CNA") at Evergreen from July 28, 2014 to November 1, 2018. Throughout her employment with Evergreen, Hicks was a member of the Union and covered by a CBA between SEIU and Evergreen.

4. I have reviewed the Complaint in this matter, which alleges that Evergreen collected plaintiff's "fingerprint" without first complying with the Biometric Information Privacy Act's policy, notice and consent requirements.

5. Attached as Exhibit 1 is the CBA between SEIU and Evergreen in effect when Hicks was hired on July 28, 2014. SEIU and Evergreen have been parties to successive CBAs during Hicks' employment. The current CBA runs through April 30, 2022.

6. Hicks' terms and conditions of employment were governed by the CBAs. At all times relevant to the Complaint, the SEIU was the "sole collective bargaining agent for … all full time and regular part time Certified Nurses Assistants (CNAs)" at Evergreen. (*See* Exhibit 1, Article 2, Paragraph 1a.)

7. The CBA provides Evergreen with a broad and extensive management rights' clause:

> Management of the Home, the control of the premises and the direction of the working force are vested exclusively in the Employer subject to the provisions of this Agreement. The right to manage includes, but is not limited to, the following: The right to select, hire, transfer and promote, and to discipline, suspend or discharge for just cause; assign and supervise employees; to determine and change starting times, quitting times, and shifts, and the number of hours to be worked; to determine staffing patterns; to determine policies and procedures with respect to patient care; to determine or change the methods and means by which its operations ought to be carried on; to set reasonable work standards….

(*Id.* Article 5.)

8. Appendix A to the CBA sets forth work rules and penalties for the violation of each work rule. (*Id.* pp. a-k.) Rule 36 states: "For issues which are not addressed in this addendum … each facility shall have the right to promulgate, modify and enforce any other reasonable rule, policy or regulation regarding the work, safety, attendance…." (*Id.* Rule 36, p. i.)

B.03

9.     In addition to the broad management rights' clause, the CBA establishes a grievance and arbitration procedure that culminates in final and binding mandatory arbitration before an arbitrator selected by the parties from a panel provided by the Federal Mediation and Conciliation Service ("FMCS"). (Exhibit 1, Article 15, Sections 1(c) and 4.)

10.     The successive CBAs between SEIU and Evergreen contain identical or similar language to the above quoted language.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 9, 2020

Kevin McInerney

# EXHIBIT 1 TO EXHIBIT B

# AGREEMENT

# SEIU HEALTHCARE ILLINOIS & INDIANA

# AND

# ILLINOIS ASSOCIATION of HEALTH CARE FACILITIES

## Effective Dates
## January 1, 2012 through December 31, 2014

## AGREEMENT

### ARTICLE 1 - PARTIES

This Agreement is entered into between SEIU Healthcare Illinois and Indiana (herein called the "Union") and the Illinois Association of Health Care Facilities (herein called the "Committee"), for and on behalf of its present member represented Employees, their successors and assigns (herein collectively called the "Employer") and shall be effective from January 1, 2012 through December 31, 2014.

WHEREAS, the parties desire to establish and maintain a united, cooperative action between the Employer and the employees in order to promote harmonious industrial relations:

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, the parties agree as follows:

### ARTICLE 2 - RECOGNITION

1a.     The Employer recognizes the Union as the sole collective bargaining agent for those job titles in each facility for which the Union historically has been recognized and for those titles for which representation is established under these procedures.  Beginning on the date of ratification of this Agreement, new Employers becoming bound to this Agreement pursuant to the terms of this Agreement shall recognize the Union as the sole collective bargaining agent for all full time and regular part time Certified Nurses Assistants (CNAs), Dietary Employees, Housekeeping Employees, Laundry Employees, Activity Aides, Rehab Aides and Psychosocial Aides, but excluding licensed practical and registered nurses, confidential employees, casual employees, guards, and supervisors as defined by the National Labor Relations Act.

1b.     For the purposes of notifications by the Employer to the Union required in this agreement, it is understood that the Union is defined as the representational staff employed by the Union. Such notifications shall be made in writing to either the business address of the Union, or through the Union's Member Resource Center via email at CBR@seiuhcil.org or via facsimile at 312.784.3179. In addition, the Employer will endeavor to notify a steward if one is available at the applicable facility or facilities.

2.     The Employer agrees not to enter into any agreement or contract with its employees, neither individually nor collectively, which conflicts with any of the provisions of this Agreement.

3.     (a)     At facilities subject to this Agreement at which the Union currently represents some employees, the Union may request recognition as the exclusive collective bargaining representative for any remaining unrepresented, non-supervisory employees not excluded in Section 1of this Article for whom the Union claims majority status. The Union's representation in such cases will be determined by an election conducted by the

National Labor Relations Board or by majority card check if the Employer and the Union mutually agree to forego an NLRB election. Any card check verification conducted under this paragraph shall occur within three (3) days of the Union's written demand for recognition. If the Union's representation is verified by a majority card check or NLRB election, the Employer shall apply the terms of this Agreement to the affected employees within thirty (30) days of voluntary recognition or certification of election results. Nothing in this section shall affect the rights of either party with respect to newly created positions as set forth in Section 7 below. This shall not apply to any Employer facilities at which employees are represented by any other labor organization for the classifications set forth in Section 1.

     (b)    Whenever the Union becomes involved in organizing activity described in Paragraph 3(a), the Employer shall maintain a neutral position as follows:

     (1)    The Employer shall advise employees in the job classifications being organized by the Union that it is not opposed to the selection of SEIU Healthcare Illinois and Indiana as their bargaining representative;

     (2)    The Employer shall refrain from lending any assistance or support of any kind to any group opposed to SEIU Healthcare Illinois and Indiana;

     (3)    The Employer shall not hold any one-on-one or group paid time meetings where the subject to be discussed is representation by the SEIU Healthcare Illinois and Indiana;

     (4)    The Employer shall instruct its owners, managers, supervisors, and other agents to refrain from initiating or participating in conversations with employees that SEIU Healthcare Illinois and Indiana seeks to organize about the Union or Union representation; provided however, that if an employee in the proposed bargaining unit asks an owner, manager, supervisor, or other agent a question about the Union or Union representation, the question may be answered factually and the employee shall be advised that the Employer is neutral on the question of Union representation and that the choice of whether the employee wants to be represented by SEIU Healthcare Illinois and Indiana is for the employee to make;

     (5)    The Employer shall not disseminate any written materials regarding the Union's organizing campaign; provided however that the Employer may disseminate written material that corrects any inaccurate statements made by the Union. Any such written material shall be factual and positive and shall not criticize or disparage the Union, its officers or members, or its mission.

     (6)    In return for the Employer's commitment to strict neutrality, the Union agrees that any statement made by the Union when organizing employees pursuant to Section 3(a) shall be factual and shall not disparage either the practices, policies, motive or mission of the Employer and/or any related entity or any representatives thereof. The Union may convey its position fairly and may provide employees with factual information to support an informed decision. The Union shall not communicate with employees regarding the financial status

1.04

of the Employer or any related entity or any of the representatives thereof. The Union further agrees that its campaigning activities shall not interfere with the work of the Employer's employees.

(7)    Where an NLRB election is conducted, such election will be conducted in the unrepresented, non-supervisory classifications requested by the Union pursuant to those provisions of Appendix C with the exception of Sections 1, 2, 3, 4 (for the classifications sought), 6, the limitations of Section 17(a) and (b) (in that the election would be conducted for titles which in themselves would not constitute an appropriate unit), and Exhibit C and Information Sheet.

4.    For existing or future nursing home facilities of Employers at which no labor organization currently represents employees in the job classifications set forth in Section 1 of this Article, the Union may request recognition as the exclusive bargaining representative in a unit comprised of the job classifications set forth in Section 1. The Union's representation in such cases will be determined by an election conducted by the National Labor Relations Board or by majority card check if the Employer and the Union mutually agree to forego an NLRB election. Any card check verification conducted under this paragraph shall occur within three (3) days of written request by the Union. Organizing at these facilities will be conducted in accordance with the rules of conduct as set forth in Appendix C.

5.    If the Union's representation is verified by a majority card check or NLRB election for facilities organized pursuant to Section 4, the Employer will recognize the Union as representative of the employees and will apply the terms of this Agreement within thirty (30) days of such recognition. At the request of either the Union or the Employer, provided such request is made within seven (7) days of recognition, the parties will enter into negotiations for a side letter to address issues specific to that facility, either where this Agreement is silent on such issues or where differing conditions at the facility require further negotiation.

The Employer will not file a petition with the National Labor Relations Board for any election or other proceeding in connection with any demand for recognition by the Union made pursuant to these provisions.

The Union will not file a Unit Clarification petition for positions historically excluded from the unit but reserves its right to file a Unit Clarification petition for positions recently created or recently excluded.

6.    The provisions of Article 2, Sections 4 and 5 and Appendix C, shall apply to any facilities which currently or in the future are owned as defined herein by the owners of Association members party to this agreement who have the right either directly or indirectly to control employees of the facility. Ownership under this section shall mean where the majority ownership of the non-union facility is owned either individually or collectively by owners who (either individually or collectively) are owners of facilities under his agreement. The term "owners" shall include all immediate family members and

legal trusts established on behalf of the owner or the owner's immediate family members. This provision shall not be subverted by any owner's relinquishment or delegation of the right to control employees.

Ownership shall be based on ownership of the operating license, including a lease of the operating license. Article 2 and Appendix C shall **not** apply where the owners (1) own only the real estate of the facility; (2) have no ownership interest in the operating license of the facility; (3) have no control either directly or indirectly of the employees of the facility; and (4) have leased the real estate to non-related parties (provided the lease is not entered into for the purpose of avoiding obligations under this agreement.)

7. (a) In the event the Employer creates a new, non-supervisory, non-managerial, job classification which shares a community of interest with the employees in the recognized bargaining unit, the Employer shall so inform the Union. At the Union's request, the Employer will meet with the Union to discuss whether or not the new classification shall be included in the bargaining unit and, if so, the appropriate rate of pay. If the parties cannot agree on the bargaining unit placement, the Union may, consistent with the provisions of the National Labor Relations Act, file a unit clarification petition. If the parties agree on inclusion of the job classification in the unit (or if the National Labor Relations Board decides in favor of inclusion) but the parties disagree on the rate of pay, the Union may request arbitration in accordance with the procedures set forth in Article 15 of this Agreement. The sole issue before the arbitrator shall be whether or not the rate established by the Employer bears a reasonable relationship to the rates of other bargaining unit jobs.

(b) In the event the Employer combines or substantially changes the duties of a bargaining unit job(s), the Employer will notify the Union. Upon request, the Employer will meet with the Union to discuss the appropriate wage rate applicable to such job. If the parties disagree on the appropriate rate, the Union may request arbitration in accordance with the procedures set forth in Article 15 of this Agreement. The sole issue before the Arbitrator shall be whether or not the rate established by the Employer bears a reasonable relationship to the rates of other bargaining unit jobs.

## ARTICLE 3 - MAINTENANCE OF STANDARDS

1. (a) No employee during the term of this Agreement shall, suffer any reduction in their hourly rate of pay (including appropriate differentials or other appropriate premium pay). Any raises granted in excess of contractually required minimum rates (whether granted prior to or during the term of this Agreement) shall be part of the employee's contractual rate of pay and shall not reduce the employee's eligibility for any subsequent contractually required raises. This provision shall not apply to any temporary premiums, differentials, merit, bonus or incentive programs established under Article 19, Section 1(c) of this Agreement.

(b)     A copy of the Work and Safety Rules and Regulations set forth in Appendix A shall be posted in each facility and, to the extent that such Rules and Regulations provide for discipline for actions for which no discipline was previously provided, no disciplinary action will be taken prior to 14 days after posting at each Employer's facility.

## ARTICLE 4 - UNION SECURITY AND CHECK-OFF

1.     All present employees who are members of the Union on the execution date of this Agreement shall remain members in good standing as a condition of their employment. All present employees who are not members of the Union and all employees who are hired hereafter for a classification covered by this Agreement shall become and remain members in good standing in the Union as a condition of their employment on the thirty-first (31st) day following the beginning of their employment or the execution date of this Agreement, whichever is later. The term "member" or "member in good standing" shall be limited to the payment of the initiation fees and membership fees uniformly required as a condition of acquiring or retaining membership, and shall be a financial obligation only. Nothing in this Agreement shall require employees to join or become formal members of the Union.

2.     For each employee who shall voluntarily sign a proper form of authorization of check-off of Union initiation fees and Union dues (the signing should be in duplicate, and a copy of each such authorization shall be promptly mailed by the Employer to the Union), the Employer shall check-off and deduct the initiation fee from the employee's wage and remit it to the Union.   The Employer shall further check-off and deduct from such employee's paycheck on each pay period, an equal amount of regular Union dues and shall remit the same to the Union by the twenty fifth (25th) day of such month.  The dues deducted from the employee's wages and remitted to the Union shall be in amounts specified by the Union to the Employer.   With each remittance of dues, the Employer shall furnish to the Union a letter or written report stating the name, classification, home address of new employees, telephone number, date of hiring and the amount remitted on account of each employee and the names of any employees no longer employed and their date of separation. Such written reports shall be transmitted electronically where the employer is capable of such transmission. The Employer shall be given thirty (30) days notice of any change in amounts due under this Section. The provisions of this Agreement shall be exercised in accordance with existing law.

3.     In the event any dues are not paid within 60 days of the date they are due, and provided the Union has promptly notified the Employer of the failure to pay and there is no dispute as to the obligation to pay such dues, the Employer shall be obligated to pay an additional 10% of the amounts due. The Union may use any applicable legal remedies not prohibited by Article 15A of this Agreement in the event of a non-payment of dues under this provision. Such dispute shall not be subject to Article 15 of this Agreement.

4.      There shall be no deduction of any kind from an employees pay except as agreed upon between the Employer and employee or as required by Law.

5.      The Union agrees to indemnify, defend, and save the Employer harmless against any and all claims, suits, or other forms of liability arising out of the deduction of dues and fees from an employee's pay, or from any other liability of any nature on account of the Employer's compliance with this Article.  The Employer shall promptly notify the union of any such claim, suit, or other such complaint.

## ARTICLE 5 - MANAGEMENT RIGHTS

Management of the Home, the control of the premises and the direction of the working force are vested exclusively in the Employer subject to the provisions of this Agreement. The right to manage includes, but is not limited to, the following:  The right to select, hire, transfer and promote, and to discipline, suspend or discharge for just cause; assign and supervise employees; to determine and change starting times, quitting times, and shifts, and the number of hours to be worked; to determine staffing patterns; to determine policies and procedures with respect to patient care; to determine or change the methods and means by which its operations ought to be carried on; to set reasonable work standards; to determine the size and locations of the Employers Home; to extend or curtail, and to terminate (with proper notice for an opportunity for negotiations) the operations of the Employer, to introduce new and improved methods or facilities; and to change existing methods or facilities.  The Employer has and retains the powers, functions, rights and authority it would have, but for the signing of this Agreement, except those specifically abridged or modified by the express provisions of this Agreement, provided, however, that such powers, functions, rights and authority shall not be enforced or exercised contrary to or inconsistent with the provisions of this Agreement.

## ARTICLE 6 - DISCRIMINATION

1.      The Employer shall not discriminate with respect to employment by reason of race, color, religion, sex, national origin, mental or physical disability unrelated to ability to perform the essential functions of the job, age, military status or Union membership or activity.

2.      The provisions of the Agreement shall be interpreted and applied in conformity with the Americans with Disabilities Act.  In the event an employee shall require a reasonable accommodation under the Americans with Disabilities Act, and the Employer believes that such accommodation is in conflict with some other provision of this Agreement, the Employer shall notify the Union of the potential conflict, and upon request shall discuss the matter with the Union subject to any applicable confidentiality restrictions.   It is understood that the implementation of reasonable accommodation required by the ADA shall supersede other provisions of this Agreement.

## ARTICLE 7 - UNION REPRESENTATION

1.      (a)      The Employer recognizes the right of the Union to select or elect from the employees who are members of the Union steward(s) to handle such Union business at the Employer's premises where they are employed, as may from time to time be delegated to them by the Union in connection with this collective bargaining agreement.  The name of each such steward shall be furnished in writing to the Employer and any changes in the chief steward shall be reported to the Employer in writing.  From among the stewards at each location, the Union will designate one Chief Steward for each facility to handle such Union business as may from time to time be delegated to him/her by the Union in connection with the administration and enforcement of this collective bargaining agreement.  The Chief Steward shall normally be the steward responsible for the steward's role in the grievance procedure, and where the Employer is initiating discussion with a steward on any matter other than investigatory interviews and discipline (which may be handled by any available steward), the Employer shall initiate contact with the Chief Steward.  The Union will appoint no more than four (4) stewards at any facility, except that for any facility with more than 100 members, the Union may appoint up to five (5) stewards.

        (b)      No activities of any steward which interferes with work, including discussions with any employee regarding any grievance or potential grievance, shall be performed on working time without the prior permission of the supervisor of the steward and the supervisor of any employee involved.  Such permission shall not be unreasonably withheld or delayed.  Any such activity shall be conducted expeditiously and will not in any way unduly interfere with the work of the steward or any other employee or the care of any resident.  Break time, whether paid or unpaid, shall not be considered working time for these purposes.

        (c)      Discussions of grievances between the steward and members of management shall take place at a mutually agreeable time, either on working or non-working time, and shall be conducted expeditiously and in such a way as to minimize any interference with the work of the steward or resident care.

        (d)      Nothing in this agreement shall be construed as waiving employees protected rights to engage in conversation regarding union matters to the same extent that other non-work related conversation is permitted on working time, nor to restrict protected rights regarding solicitation and distribution under the National Labor Relations Act.

2.      The Union representative shall have admission at reasonable times to discharge his/her duties in the areas in which employees regularly take breaks/lunch.  The representatives will notify the facility twenty-four (24) hours prior to arrival.  When the visit is outside business hours, such notification shall be prior to 5:00 p.m. on the previous business day. For visits that require more immediate attention, such as disciplinary action related to a specific member, the representative will notify the facility at least two (2) hours prior to arrival.  The notice should identify who the representative is, and upon arrival, the representative should display their union credentials.  Such representatives shall not unduly interfere with the work of any employee or member of management.  Any meeting between Union representatives and member of management shall be at mutually agreeable times.

3.     The Employer will provide a bulletin board in the facility for the purpose of posting Union notices signed by a Union official, the location to be near the time clock or in another area where notices to employees are normally posted.  Such notices shall be of a non inflammatory, non derogatory nature. The facility Administrator will be given a copy of any such notice prior to posting.

4.     The chief steward from each facility will be paid eight (8) hours at their applicable straight time rate of pay for attending the annual Union Leadership Assembly, and each facility will make a reasonable effort to release all recognized stewards, provided the steward or the Union has provided the facility with not less than 21 days' notice of the intended absence. Such time shall not be counted as hours worked for any purpose.

5.     Union Orientation. The Employer will notify the Union steward of all new hires into bargaining unit positions within the first 30 calendar days after their hire date.  The steward or a Union staff person when there is no steward available on the shift, will be provided an opportunity to meet for fifteen (15) minutes on working time, at a time and place to be designated by the Administrator, with the new employee to inform the employee of the employee's rights, obligations, and benefits under the collective bargaining agreement. Such discussion shall not include any disparagement of the Employer.

6.     Union Leave of Absence. Upon 21 days written request from the Union, employees with at least one year of service shall be entitled to receive a leave of absence of up to ninety (90) days, without loss of seniority or other rights under this agreement for Union business. Such a request shall not be unreasonably denied.  The employee will continue to be bound by the rules of HIPPA and confidentiality with respect to the Employer, the facility and its residents while on leave.  The Employer will not be responsible for paying benefits and the employee will not accrue sick or vacation pay while on leave of absence.  No more than one employee per facility will be on a leave of absence pursuant to this section at any one time.

7.     Steward Representation-Investigation of Discipline.  (a) An employee who has a reasonable basis to believe he/she may be subject to discipline may choose to have the Union steward present for an investigatory interview.  If the Union steward is not reasonably available, by mutual agreement the interview may be rescheduled to a time when the union steward is available, or the employee may designate another employee who is reasonably available to perform the functions of the Union steward, or the employee may proceed with the interview without such assistance, or the employee may decline to proceed with the interview without such assistance. If the employee chooses to decline to proceed with the interview without such assistance, the Employer may choose to dispense with the interview and may make any disciplinary decision on the basis of other available information without in any way prejudicing its right to issue appropriate discipline if just cause exists.  If the Union steward or other employee representative is present for such

interview, their conduct shall conform to the parameters established by the National Labor Relations Board.

(b)     If requested, any employee interviewed shall provide a written account of the events under investigation, provided that the employee shall have up to 24 hours from the time of the request to submit their written statement following the interview.

(c)     If the employee requests, a steward may be present when the employee is presented with a notice of a written disciplinary action. This provision does not apply where the Employer is simply mailing or similarly delivering a disciplinary notice without holding a meeting or discussion of the notice (other than to explain or answer questions about the discipline), nor does it apply where no steward is reasonably available to attend the meeting. When presented with any notice of written disciplinary action, the employee will be required to acknowledge receipt of the disciplinary action but such acknowledgement shall not be an admission or agreement with the matters contained in the notice. If the Employee refuses to sign the acknowledgement of receipt, such refusal shall be noted on the notice. The employee shall be provided with a copy on request. Such failure to provide a copy of the notice shall not affect the validity of the discipline, but the timeline for filing a grievance will not begin until such copy is provided.

## ARTICLE 8 - WORK WEEK, SCHEDULES AND OVERTIME

1.     (a)     The standard workday in effect (in each facility) as of the date of execution of this Agreement shall remain in effect on a job classification basis for the duration of this Agreement. A temporary increase in the length of the work day shall not create a guarantee of the continuation of the longer day.

(b)     Overtime at the rate of time and one-half the employee's straight time hourly rate shall be paid for all hours actually worked over eighty (80) hours in any two week pay period or over eight (8) hours in any one day. Provided that if the Employer, the Union, and the employees in a specific department agree, overtime in that department only shall be paid for all hours worked over forty (40) hours in any one week pay period but not for hours worked in excess of eight (8) hours in any one day. After an employee has worked an additional shift or hours, the Employer shall not involuntarily change the schedule for the purpose of avoiding the payment of overtime.

(c)     The Employer shall post employees' schedules or provide employees with a written copy of the schedule at least seven (7) calendar days in advance of the schedule. If the posting is late, the employees shall not be disciplined for call offs and tardiness on the new schedule, which occurred as a result of the late posting, within seven (7) days of said posting.

2.      All Employers will pay on a bi-weekly payroll.

3.      An employee who reports prior to the regularly scheduled starting time and departs after the regularly schedule quitting time to allow time for uniform changes or for reasons of personal convenience shall not be entitled to compensation for the early arrival or late departure, but such employee shall not be required to start work before the regularly scheduled starting time or to work after the regularly scheduled quitting time merely by reason of being on the premises.

4.      Except in cases of emergency, serious illness or accident, an employee shall notify the Employer at least four (4) hours in advance of his inability to report for work on any regularly scheduled work day. For employees with illnesses which last more than one day, if the employee is aware that the illness will last more than one day, and reports the specific duration of the absence, the employee shall not be required to continue calling in each day of the absence

5.      Any employee instructed to report for work, and reporting, but not put to work, shall receive four (4) hours pay.

6.      The Employer shall not change an employee's regularly scheduled hours of work during any pay period which includes a Holiday, where the effect of such change will result in an employee receiving less pay during such period than the employee would have received had the hours not been changed.

7.      Any employee instructed to report for an in-service meeting on their day off will be paid a minimum of two (2) hours at their applicable straight time rate of pay.

8.      No Pyramiding. Pay for time not worked shall not be counted as hours worked for any purpose unless expressly provided for by a provision of this Agreement. There shall be no pyramiding or duplication of overtime pay. Hours paid for at overtime rates under one provision of this Agreement shall be excluded as hours worked in computing overtime under any other provision.

9.      The Employer shall designate a break room or area where employees may take their breaks, whether paid or unpaid, where they will not be interrupted. In the event an employee is interrupted during an unpaid break, the unpaid break shall be rescheduled for a later time during that shift or the employee shall be compensated for the full thirty (30) minutes of that break. If the Employer cannot provide an area where employees may take

1.12

uninterrupted unpaid breaks the Employees shall be permitted to leave the facility during unpaid breaks.

10.     The Employer will give the Union 30 days notice of any proposed change in the starting and ending times of shifts and will, on request, bargain with the Union over the impact of the proposed change. However, at the end of the thirty-day period, the Employer may implement the change regardless of the status of the negotiations.

11.     Employees may trade schedules with each other within the same job classification provided the request is made in writing to the supervisor and is approved by the supervisor. Requests to trade schedules shall not be unreasonably denied. Increased overtime for either employee may be a reason for denying the request. If a trade is approved, the employee who agreed to work the shift is subject to the absentee policy for that shift.

12.     Employees expected to work in more than one department or job classification will be oriented in those departments and/or jobs and will be included in all in-services for those departments and/or job classifications.

13.     Effective January 1, 2006, the Employer shall endeavor, where feasible, to grant all employees at least every other weekend off, except for those employees who voluntarily agree to work a more frequent weekend schedule. Prior to January 1, 2006, the Union and the Employer shall meet on a facility by facility basis for any facilities which do not currently grant at least every other weekend off, in order to review ways to grant at least every other weekend off. Where the Employer has created shifts and/or hired employees to positions with permanent days off, the arrangements shall not be considered in conflict with this section. The definition of "weekend" shall be as mutually agreed upon during the pre-January 1, 2006 discussions at each facility.

14.     In non-emergency situations where additional hours become available on a temporary basis, due to absence, unfilled vacancies, or other similar situations, the Employer shall offer those hours to employees in a fair and equitable manner. Prior to filing a grievance pursuant to an alleged violation of this section, the Union will contact the Employer to discuss the reported problem, and following the discussion, afford the Employer a reasonable period of time to remedy the problem. If the alleged violation continues to occur, a grievance may be filed.

15.     No employee shall have their straight-time scheduled hours and/or days reduced in order to have those hours assigned to a new hire or a less senior employee.

### ARTICLE 9 - HIRING

The Employer may secure employees by contacting the Union, for which services there shall be no charge either to the Employer or to the employee. At all times the right of hiring shall remain with the Employer.

## ARTICLE 10 - VACATIONS

1.      Full time employees who have worked a minimum of 1,800 hours in their anniversary year are eligible to receive paid vacations in the year following the year in which the anniversary of the commencement of their current period of continuous service falls in accordance with the following schedule:

One (1) year of continuous service One (1) week
Two (2) years of continuous service Two (2) weeks
Five (5) years of continuous service Three (3) weeks
Seven (7) years of continuous service Four (4) weeks

In the event a full time employee has not worked the minimum 1,800 hours, the paid vacation to which such employee would have been entitled shall be pro-rated so that the employee will receive the same portion of the total vacation that the hours worked by such employee is of 1,800 hours. For purposes of computing hours worked under this Article, all hours for which payment is received (e.g., vacation, holidays, sick leave) shall be deemed hours worked. Up to eight (8) weeks of workers' compensation received as a result of an injury at the Employer shall be counted as hours worked for purposes of vacation eligibility during the anniversary year following the employee's return to work.

2.      The Employer may fix the period when such vacation may be taken, however any vacation "black-out periods" shall not exceed two (2) months in any six (6) month period. Each facility shall establish their own systems and deadlines for vacation requests and approvals. In the event of a conflict between employees over choice of vacation dates, seniority shall prevail. Vacation requests cannot be unreasonably or arbitrarily denied.

3.      The length of an employee's continuous service shall be defined by the Seniority Article of this Agreement.

4.      All vacations shall be with pay at forty (40) hours a week except as provided in Section 1. An employee, at the Employer's option, may work through his vacation period and receive vacation pay as a year-end bonus. All vacation benefits will be paid or used by the employee prior to such employee's next anniversary and may not be carried over to succeeding years. Vacation pay is due no later than the week preceding the first week of vacation.

## ARTICLE 11 - HOLIDAYS

1.      Qualified employees shall be entitled to the following paid holidays in each year; namely, Martin Luther King Jr., Memorial Day, Independence Day, Labor Day, Thanksgiving Day, New Year's Day, Christmas Day, the Employee's Birthday for those employees with five (5) years or more of continuous service. The Birthday Holiday may be

taken any time in the month of the employee's birthday. Any time worked on these days shall be paid at double the regular rate of pay.

2.    Employees shall be notified at least one (1) week in advance as to whether it shall be necessary for them to work on any of the holidays specified.

3.    To qualify for holiday pay:

a. the employee must have completed his or her probationary period prior to such holiday

b. the employee must work on all of the employee's last scheduled work day before the holiday (except as provided below) and all of the employee's first scheduled work day after the holiday, and the holiday if scheduled.

c. if the employee is tardy on the last scheduled work day prior to the holiday, and/or the holiday itself, and/or the first scheduled work day after the holiday, said employee may be disciplined as provided for under Appendix A of this Agreement.

d. if the employee is tardy the last scheduled work day prior to the holiday, and/or the holiday itself, and/or the first scheduled work day after the holiday, said employee may be docked from their holiday pay up to the accumulated amount of time tardy on all three days, excluding grace periods as set forth in Appendix A of this Agreement, as calculated as follows: the actual amount of time tardy on the last scheduled day before and the first scheduled day after the holiday plus two (2) times the actual amount of time tardy on the holiday itself.

e. In addition to the penalties set forth in subsections c and d above, if the total time docked as calculated above totals three (3) hours or more, the employee will forfeit eligibility for holiday pay.

f. Notwithstanding the provisions above, where an employee has made arrangements with the Employer for a later start time such later start time shall not be considered as tardy.

g. An employee who works at least five hours of the last scheduled work day before the holiday, and who receives specific permission from the employer to leave early shall still receive holiday pay if otherwise eligible for the holiday pay.

4.    If a holiday falls on an employee's day off, or during the employee's vacation period, such employee shall receive an extra day off or an extra day's pay, whichever the employee may prefer, provided that the employee gives the Employer notice at least three (3) weeks prior to the start of their vacation that the employee prefers an extra day of vacation. If the notice is not given, the employee will receive the extra day's pay.

## ARTICLE 12 - MEALS

All employees coming under this Agreement shall receive one (1) free hot meal each working shift, provided they have given one week's advance notice to Employer that they desire such meals in any week. Where feasible, the Employer will provide an option of a hot meal or the means for an employee to warm their food.

## ARTICLE 13 - TERMINATION AND SEVERANCE PAY

1.      The Employer may discharge or discipline employees only according to the Work and Safety Rules and Regulations or other just cause.

2.      The Employer shall within two (2) business days after notice of dismissal to any regular employee also give notice of such dismissal to the Union.

3.      If any Employee is placed on a suspension pending investigation for an alleged violation, such Employee will not be paid for lost time if the violation proves to be true. However, if the investigation proves to be inconclusive, the Employee would be reimbursed for any and all lost wages incurred during the suspension at their regular straight time rate of pay.   The employee will not be reimbursed for any hours that would have been considered overtime.

## ARTICLE 14 - VOTING TIME

If a request is made to the Employer for time off for voting at least three (3) days in advance of any national, state or municipal election, it shall be mandatory upon the Employer or his representative to grant the employee two (2) hours off with pay for the purpose of casting their vote in all national, state or municipal elections. Proof of casting a ballot (ballot stub) will be required to receive pay.

## ARTICLE 15 - GRIEVANCE AND ARBITRATION

1.      The differences or disputes over the interpretation or application of the provisions of this Agreement shall be adjusted in the following manner:
          (a)      Step 1: All grievances must be filed in writing with the Employer's administrator or designee within seven (7) calendar days of the occurrence of the event giving rise to the grievance or within seven (7) calendar days of when the employee learned or should reasonably have learned of the occurrence of the event giving rise to the grievance. Any grievance not filed within the time limits set forth in this Section is barred. Unless mutually agreed otherwise, the Union and Employer shall hold a meeting to discuss the grievance at Step 1. Within seven (7) calendar days of the meeting, the Employer shall answer the grievance in writing to the Union Representative.
          (b)      Step 2: If the Union is not satisfied with the Employer's answer in Step 1, it may within seven (7) calendar days of the Employer's answer appeal the grievance to Step 2 of the procedure by appealing in writing to the representative previously designated by the Employer.  If the grievance is not appealed in writing within seven (7) calendar days of receipt of the written answer in Step 1, it is barred.  Unless mutually agreed otherwise, the Union and the Employer shall hold a meeting to discuss the grievance at Step 2.  Within seven (7) calendar days of the meeting, the Employer's designated representative shall provide a Step 2 answer to the grievance in writing to the Union Representative.

        (c)     Arbitration:  Within thirty (30) calendar days of receipt of the Employer's written answer at Step 2, the Union, and only the Union, may appeal the grievance to arbitration. To be timely, the Union must notify the Employer in writing of its intent to arbitrate the dispute and the Union must simultaneously request from the Federal Mediation and Conciliation Service a list of seven (7) arbitrators, all of whom shall be members of the National Academy of Arbitrators from the Chicago Metropolitan area. The parties shall select the arbitrator from that list by alternately striking names until one name remains. The Employer shall have the opportunity to strike first. Each party shall have the right to reject one entire panel, provided that party so notifies the other party within seven (7) calendar days of receipt of the panel and simultaneously files for a replacement panel with the Federal Mediation and Conciliation Service. Separate grievances shall not be joined in a single arbitration except by mutual written agreement of the parties.

        2.     Any written settlement shall be binding between the Union, the Employer, and the employee(s).

        3.     The Employer shall designate a representative(s) to handle the steps of the grievance procedure, and shall inform the Union of the appropriate representative and any contact information, and of any changes in that representative and the Union shall inform the Employer of the appropriate representative and contact information and of any changes in that representative. The Employer may also wish to inform the Union that it does not wish to appoint a representative for either step, in which case the Union's time limit for appealing to arbitration shall be from the date of the written answer in the previous step.

        4.     The arbitrator's decision shall be final and binding on the Employer, the Union, and the aggrieved employee(s). The arbitrator shall be bound by the express provisions of this Agreement and shall not have the power to add to, subtract from, or modify any of the express provisions of this Agreement.

        5.     The arbitrator's fee and expenses shall be shared equally by the employer and the Union. The filing fee, if any, and the place of holding the hearing will be covered by the Union. Each party shall be responsible for compensating its own representatives.

        6.     In cases involving the discipline or discharge of an individual employee, the parties may mutually agree to the following steps to expedite the conduct of the hearing: Both parties will use non-attorney representatives to present the case. The hearing will be conducted in one day with both parties having equal time. There shall be no written briefs filed unless mutually agreed otherwise. No court reporter will be used. The arbitrator will

issue a brief written award summarizing the reasons for his/her decision. Such cases shall have no precedential value and may not be relied upon in any other arbitration.

7.      The Employer and the Union, at their option and expense, may request the use of a court reporter during arbitration (except as set forth in Section 6). If the other party declines to pay one-half of the cost of the court reporter, they shall forfeit all rights in the court reporter's transcript.

8.      Nothing in this Agreement shall require the Union to represent an employee if the Union considers the grievance to be invalid or without merit.

9.      Any mutually agreed extension of the time limits set forth in this Article shall be reduced to writing and shall be to a specific date or event. A request for an extension of a time limit by either party shall not be unreasonably denied.

10.     Notwithstanding the provisions of Section 1, above, if an employee has a grievance over an error in their rate of pay, compensation, or the receipt of an economic benefit, the employee may file a grievance at any time within ninety (90) calendar days of the occurrence of the event giving rise to the grievance. Any such grievance not filed within such ninety (90) calendar day period is barred.

## ARTICLE 15A - NO STRIKE – NO LOCKOUT

1.      The Union will not cause or permit its members to cause, and will not encourage, support, or sanction in any way any strike, slowdown, unfair labor practice strike, sympathy strike, work stoppage, or any other concerted interference with work, nor shall there be any lock out by the Employer during the term of this Agreement. Informational picketing is prohibited during the term of this Agreement, except after notice has been given to re-open or re-negotiate this Agreement in which case it will be permitted with proper legal notice. In the event of any action in violation of this section and upon request of the Employer, the Union will promptly notify all such employees of its disapproval of such violations and shall undertake all additional reasonable means to induce such employees subject to this Agreement to cease such action, including:

(a)     Publicly disavowing such action by the employees or other persons involved;
(b)     Advising the Employer in writing that such action has not been caused or sanctioned by the Union;

Case: 1:20-cv-04032 Document #: 1-2 Filed: 07/09/20 Page 23 of 75 PageID #:47

(c)   Posting notices on Union bulletin boards in the facility stating that it disapproves of such action and instructing all employees to cease such action and return to work immediately; and

(d)   Taking all such other steps as are reasonably appropriate to bring about observance of the provisions of this Article.

2.   Where such means and steps have been undertaken by the Union, neither the Union nor any of its officers or representatives shall be liable for damages resulting from such actions or violations. The Employer reserves the right to discipline any employee taking part in any violation of this section, including discharge of such employee, provided however that any Employee covered by this Agreement may refuse to report to work at any other facility of the Employer at which there is then existing an authorized strike or picketing by or on behalf of the Union, and such refusal by any such Employee shall not constitute grounds for discipline by the Employer.

## ARTICLE 16 - JURY DUTY AND WITNESS APPEARANCE

Any employee called as a juror or witness will be granted excused absence with pay for the period necessary, provided that when the employee receives their check for jury duty payment or witness fees, they endorse it to and remit the same to the Employer. The employee shall be entitled to retain any mileage or other expenses paid as a result of such service or appearance.

## ARTICLE 17 - HEALTH AND WELFARE

1.   Effective January 1, 2012 thru December 31, 2013, each Employer shall contribute to the Fund the sum of $125 per month for each full-time employee covered by this Agreement who has been on the Employer's payroll for more than 30 days. Discounts and other terms will apply as per the letter from the fund administrator dated March 24, 2008. The contract shall be re-opened on or about October 1, 2013 for the purpose of negotiating Health and Welfare contribution rates and benefits effective January 1, 2014, as described in Article 19, Section 3(c) of this agreement. This section 1shall be interpreted as also applying to any facility which is in an ownership relationship, as defined in Article 2, Section 6, with a facility subject to this Section 1.

2.   Annually, on or about the anniversary of this Agreement, or more frequently if requested by the trustees or by either of the negotiating committees, the trustees will meet with such committees, along with appropriate consultants and advisors, to review financial reports, statements, audits and data, and other meaningful information and reports, to enable the negotiating committees to determine whether or not the level of contribution to the Fund provided in this Agreement can be reduced or has to be increased in order to maintain the currently existing level of benefits on a sound actuarial basis.

1.19

3.      All contributions shall be sent to the office of the aforesaid Health and Welfare Fund not later than the twenty-fifth (25th) day of the month in which they became due.

4.      The parties agree to be bound by all of the terms and conditions of the Declaration of Trust of the Local No. 4 S.E.I.U. Health and Welfare Fund including, but not limited to, the appointment of trustees and their successors. The employer recognizes that the Board of Trustees has the sole power to construe the provisions of the Declaration of Trust, the benefit plan, and the related rules and regulations, if any, and that all constructions, interpretations, and determinations made by the Health and Welfare Trustees shall be final and binding on all parties.

5.      Any Employer failing to make prompt and timely payment of the contribution in accordance with this Agreement shall be liable for claims to the extent of benefits to which the employee would have been entitled if the Employer had made the required and timely contribution. Additionally, such delinquent Employer shall be liable for all contributions due, plus all reasonable legal fees incurred in enforcing the payment thereof.

6.      It shall be considered a violation of this Agreement for any Employer to fail to pay or comply with any provision of this Article, or any rule or regulation of the Fund. The delinquency and/or failure of the Employer under this Article shall not be a subject of grievance or arbitration.

7.      Effective January 1, 2012 thru December 31, 2013, part-time employees, as defined in Article 24 of this Agreement, may elect to be covered by the Health and Welfare Fund. Each part-time employee covered by this Agreement who has been employed for more than thirty (30) days who voluntarily elects in writing to be so covered shall contribute the sum of Twenty Six Dollars ($26.00) per month to the Local No. 4 S.E.I.U. Health and Welfare Fund by payroll deduction. The Employer shall pay the Fund the difference of the full-time employee contribution for each part-time employee who elects in writing to be covered.

8.      Part-time employees who do not elect to be covered by the Health and Welfare Fund and casual employees, as defined in Article 24, shall not be covered and the Employer shall have no obligation to make contributions to the Fund for such employees.

## ARTICLE 18 - PENSION

1.      Effective January 1, 2012, each covered Employer shall contribute to the SEIU Local No. 4 Pension Fund ("Pension Fund") the sum of $.22 per hour for each full-time and part-time employee covered by this Agreement. Contributions for full-time and part-time employees covered by this Agreement shall begin on the first day of full-time or part-time employment. Effective January 1, 2013, the rate shall be seven cents ($.07) per hour. Effective December 1, 2013, the rate shall be twenty-two cents ($.22) per hour. Effective

January 1, 2014 the rate shall be seventeen cents ($.17) per hour. Effective December 1, 2014 the rate shall be twenty-two cents ($.22) per hour. It is understood between the parties to this agreement that the intent in making this change is to provide that for any employee retiring on or after the effective date of any applicable increase, their pension shall be calculated with all years credited at the then-prevailing higher rate. (e.g., an employee retiring on December 1, 2012, will have all years calculated at the benefit rate commensurate with the contribution rate of $.22 per hour). The parties to this agreement will instruct the Trustees to make every reasonable effort to reflect this intent, but acknowledge that such application is subject to the reasonable management of the Fund.

The agreement to temporarily reduce pension contributions is contingent on the understanding that the temporary reduction in contributions will have no impact on the accrual of benefits and services by participants in the pension plan, or on the long-term financial stability of the Pension Fund. Furthermore, there will be no adverse impact of any kind on any pension plan participant or retiree, including but not limited to, the accrual of service credit or in the level of benefit accrual for 2013 and 2014. The ratification of this agreement is contingent upon the approval by the Trustees of the Pension Fund of these conditions, and the Union and Association agree to inform their Trustees of these conditions.

. 2.     The Employer agrees to be bound by all actions taken by the Board of Trustees pursuant to the powers granted them by federal law or the Trust Agreement, including, but not limited to, the appointment of Employer trustees and their successors. The Employer recognizes that the Board of Trustees has the sole power to construe the provisions of the Trust Agreement, the benefit plan, and the related rules and regulations, if any, and that all constructions, interpretations, and determinations made by the Pension Fund Trustees shall be final and binding on all parties.

3.     All contributions shall be sent to the office of the aforesaid Pension Fund not later than the twenty-fifth (25th) day of the month in which they became due.

4.     Any Employer failing to make prompt and timely payment of the contribution in accordance with this Agreement shall be liable for all contributions due, reasonable legal fees incurred in enforcing the payment thereof and such other obligations provided by the Trust Agreement and the related rules and regulations.

5.     It shall be considered a violation of this Agreement for any Employer to fail to pay or comply with any provisions of this Article, or any rule or regulation of the Trust Agreement. In the event of any delinquency or failure on the part of any Employer, that Employer shall be notified of his delinquency or failure and if such delinquency or failure continues for forty-eight (48) hours after the Employer has received notice thereof, by registered or certified mail, the Union may, notwithstanding any other provision of this Agreement, enforce this Article by all economic means, including a strike and/or picketing, until all sums due from the Employer have been paid in full. This remedy shall be in

addition to all other remedies available to the Union and the Trustees and may be exercised by the Union notwithstanding any other matter in this Agreement to the contrary expressed or implied. The delinquency and/or failure of the Employer under this Article shall not be a subject of arbitration or grievance.

6.    Casual employees, as defined in Article 24, shall not be covered by the Pension Fund and the Employer shall have no obligation to make contributions to the Pension Fund for such employees.

## ARTICLE 19 - WAGES

1.    (a)    The wage rates set forth in this Agreement are minimum wage rates. No wage rate shall be paid below these minimums to probationary employees, temporary employees, student employees or any employee in any classification.. Nothing in this Agreement shall be defined as preventing an Employer from paying above the minimum rates, granting additional wages, or paying differentials above those set forth in this Agreement.

(b)    In the event a facility decides to hire above the starting rates or provide higher raises than contractually provided for to incumbent employees, and where there is a reasonable business reason for doing so (including for the purpose of attracting and/or retaining employees) the employer shall, upon request, meet to discuss issues of equity or implementation with the Union, including the reasonable relationship of those rates to the rates paid to other comparable employees. Following such discussion, if the issue remains unresolved, the Union may grieve the Employer's action. The sole issue in the grievance shall be whether there was a reasonable business reason for the higher start pay or raises, and whether the rate paid bears a reasonable and fair relationship to the rates paid to other comparable employees.

(c)    In the event a facility decides to implement special incentive pay, bonuses or differentials, temporary incentives, or other additional compensation (other than higher start rates or higher raises) where there is a reasonable business reason for doing so, the Employer shall (1) provide notice to the Union, and (2) upon request, meet to discuss the proposal with the Union, but such meeting will not delay implementation. Following this discussion, the Union may grieve the changes. The sole issues in the grievance shall be whether the change was fair and equitable and/or whether there was a reasonable business reason for making the change.

2.    For purposes of this Article 19 only, all employees hired on or before December 31, 1984, will have January 1 as their anniversary date. All employees hired on or after January 1, 1985, shall have their actual date of hire as their anniversary date.

3    (a) Upon ratification of this agreement, all employees with an employment start date on or before December 31, 2011 shall be eligible to receive a one-time bonus in

the amount of two hundred dollars ($200.00). This payment shall be made separate from the employee's regular pay, on a payday immediately following notice to the Association of ratification.

(b) Effective January 1, 2013, all employees shall receive a wage increase of fifteen cents ($0.15) per hour. Additionally, all employees shall receive an increase of fifteen cents ($0.15) per hour upon their respective anniversary dates. All applicable rate increases will be applied on the payday immediately following notice to the Association of ratification. All retroactive increases shall be paid no later then the fourth payday following notice to the Association of ratification.

(c) Effective January 1, 2014, the Employer will apportion an amount equal to forty cents ($0.40) per hour, five cents ($0.05) of this apportioned amount will be from funds previously designated for pension contributions, for each employee, and this Agreement shall be reopened on or about October 1, 2013 for the purpose of negotiating what amount of these funds are to be allocated to Health and Welfare contribution rates first, in order to make the Health and Welfare Plan compliant with the requirement of the Affordable Care Act (ACA), regardless of the actual date of the implementation of ACA, with the balance going to the anniversary wage increase.

(d) If , at any time during the term of this Agreement, one or more of the following take place: (1) the State of Illinois or the federal government reduces the Medicaid and/or Medicare reimbursement rates and/or imposes additional surcharges or payments; (2) there are newly implement state or federal laws, regulations or programs that adversely affect the cost of providing health insurance; or (3) the State of Illinois or the federal government imposes any form of additional labor-related expense, including but not limited to a minimum wage increase or additional mandated staffing requirements; then the Association shall have the right to reopen this Agreement regarding only wage increases and/or contributions to the Health and Welfare Fund. If the Association wishes to reopen negotiations pursuant to this provision, it shall provide the Union with written notice. Promptly after such notice, the parties shall meet for the purpose of negotiating over such issues. If the parties cannot reach agreement on such issues within 30 calendar days of the commencement of such negotiations, then the Association shall have the right to request arbitration under Article 15 of this Agreement. The parties may elect to extend the negotiating period for an additional 30 calendar days by mutual agreement.

In such arbitration, the issue before the arbitrator shall be what, if any, modifications there will be to the agreed-upon increases and/or payments to the Health and Welfare Fund, and the Association shall have the burden of proving that proceeding with or continuing the agreed-upon wage increases and/or payments to the Health and Welfare Fund would cause an undue burden on the employers, given the circumstances that gave rise to the reopener. The arbitration hearing shall occur no later than 60 days after the selection of the arbitrator and the arbitrator

shall issue his/her decision no later than 30 days of the close of the arbitration hearing. The arbitrator's failure to render a timely decision shall not negatively impact either party.

If the Association does not request arbitration in writing submitted to the Union with in forty five (45) days after commencement of reopener negotiations or the mutually agreed-upon extension, whichever is later, then the wage increases and/or payments to the Health and Welfare Fund shall be as otherwise set forth in this Agreement. The issues before the arbitrator shall not pertain to any prior calendar year(s), and shall be limited to the current calendar year, as determined by the date of the original notice of reopener negotiations, as well as following in this agreement pending the arbitrator's decision. The arbitrator shall have no authority to order employees or the Health and Welfare Fund to reimburse any employer for money already received, however any reductions ordered by the arbitrator shall be applied to all employees prospectively from the date determined by the arbitrator, including those employees that may have already received any increases. The Union shall not have the right to strike, notwithstanding the Association's election to reopen this Agreement, provided that all of the terms of this provision are followed.

4. In each year of this agreement, eligible employees will receive longevity increases in addition to their bonus and/or anniversary raise based on their length of service, as defined in Article 22, as follows:

| | |
|---|---|
| 15-19 years of service | An additional 5% of the anniversary increase |
| 20-29 years of service | An additional 10% of the anniversary increase |
| 30 years or more | An additional 15% of the anniversary increase |

5.     The following wage schedule sets forth minimum wage rates where such titles exist and are represented by the Union:

| PAY GRADE 1 | PAY GRADE 2 | PAY GRADE 3 |
|---|---|---|
| **January 1, 2012 - $9.20** | **January 1, 2012 - $8.75** | **January 1, 2012 - $8.55** |
| **January 1, 2013 - $9.20** | **January 1, 2013 - $8.75** | **January 1, 2013 - $8.55** |
| **January 1, 2014 – $9.20** | **January 1, 2014 – $8.75** | **January 1, 2014 – $8.55** |
| Job Titles | Job Titles | Job Titles |
| Activity Aide w/ CNA Certificate | Head Cook/Cook | Bed Maker |
| Certified Nurses Assistant | Lead Housekeeper | Dietary Aide (Nutrition Aide, Dining Room Aide, Dishwasher, Kitchen Aide) |
| Mental Health Aide | Maintenance | Hostess |
| Resident Assistant/Attendant with CNA Certificate | Nursing Assistant (pre-certification)/NAT | Environmental Service Worker |
| Ward Clerk | Activity Aide | Housekeeping employees |
| Personal Care Assistant | Psychosocial Aide | Laundry employees |
| Resident Assistant/Attendant | Floor Tech | Patient escort |
| Lead CNA/Team Leader* | | Receptionist |
| Psychosocial Aide with CNA Certificate | | Resident Security |
| Medical Records Clerk | | Watchman |
| Rehab Aide (Occupational Rehab Aide, Physical Rehab Aide, Rehab Tech)* | | Smoking Monitor |
| Respiratory Aide | | |
| Social Services* | | |

*Starting rates for Employees in these classifications shall be $.50 more than the Pay Grade 1 minimum rate and shall be treated as separate pay grade for purposes of subsections (a) – (c) below.

    (a)    For each day an employee works in a higher pay grade, in addition to their regular hourly rate, they shall receive the difference between their regular pay grade and the higher pay grade per hour.

1.25

(b)     If an employee works in a lower pay grade, they shall receive their regular hourly rate.

(c)     An employee who bids into and is awarded a position in a higher pay grade pursuant to Article 22 of this Agreement shall receive an hourly wage increase equal to the difference between the starting wage rate of their original pay grade and the starting wage of their new pay grade.

6.     During the term of this Agreement, the parties agree to meet to discuss a formula for additional wage and/or benefit increases tied to increases in State funding. However, the entering into any such agreement will be purely voluntary for both parties.

7.     Provided the employee has submitted accurate information in a timely manner, if an employee is underpaid by an amount of four hours' pay or more due to an error by the Employer, the employee will be paid within 2 business days (excluding Saturday, Sunday, and contractually recognized holidays) of the date the employee informs the Employer of the error. Any repayment of amounts less than 4 hours' pay may be delayed until the following regularly scheduled payday. It is understood that the time limits and amounts herein are minimum standards, and nothing in this section shall prevent the Employer from issuing repayment in smaller amounts or on a faster timeframe than those contained herein.

8.     The Employer shall designate a day and time for distribution of paychecks. The Employer shall not withhold pay for the purpose of compelling attendance at meetings or as an act in lieu of discipline. In the event the employer anticipates changes in the pay period or pay day, the Employer shall give no less than seven (7) days notice to the Union of such changes.

## ARTICLE 20 - SICK PAY

1.     (a)     Employees who have completed their probationary period shall thereafter accumulate sick leave at the rate of eight hours for each 73 days employed and effective January 1, 2008 may accumulate up to a maximum of thirty (30) days of paid sick leave.

(b)     Employees with at least three (3) years of service with at least six (6) sick days balance may, upon not less than two weeks prior notice, or seventy-two (72) hours prior notice in cases of emergency, use one (1) accumulated sick day as a personal day per employment year.

(c)     Employees with at least ten (10) years of service with at least six (6) sick days balance may, upon not less than two weeks prior notice, or seventy-two (72) hours prior notice in cases of emergency, use two (2) accumulated sick days as personal days per employment year.

(d)     Notwithstanding the annual restrictions above an employee who has reached the maximum allowable accrual of sick days may, upon not less than two (2) weeks' notice, or seventy-two (72) hours prior notice in cases of emergency, use one accumulated sick day as a personal day, as frequently as an additional day is earned.

(e)     The balance and notice requirements above do not pertain to use of sick days if used for sickness.

2.     (a)     Sick pay will be payable commencing with the second consecutive day that an employee is off for sickness or accident supported by a doctor's certificate or other evidence of such sickness acceptable to the Employer except that the employee shall not be required to produce doctor's notes for short-term illness (absence of less than three scheduled workdays) for the first two instances of illness in a calendar year. After two instances of short term illness and for any illness of three days or longer, the Employer may require submission of a doctor's certificate for payment of sick pay.

(b)     Sick days are to be taken only for bona fide illness or injury. Any false claims for sick days or sick pay shall subject the employee to discipline, including possible termination, subject to just cause.

3.     No sick pay shall be payable to any employee for any absence due to illness or injury for the first day of any absence due to illness or accident. The first day will be paid if the incident goes beyond three (3) consecutive scheduled days.

4.     Except as set forth in this paragraph, no unused sick days will be paid out. In the event an employee resigns and gives two weeks advance notice of the effective date of such resignation and continues working to the effective date of the resignation if requested by the Employer, the following percentages of accumulated unused sick pay will be paid to such employees only with such payment to be made within thirty (30) days of the effective date of such resignation:

Employees having more than five (5) full years of continuous employment and less than seven (7) full years of continuous employment with the Employer shall be paid an amount equal to 50% of such employee accumulated, unused sick pay as of the effective date of such resignation.

Employees having more than seven (7) full years of continuous employment with the Employer shall be paid an amount equal to 75% of such employees accumulated, unused sick pay as of the effective date of such resignation.

Employees having more than ten (10) full years of continuous employment with the Employer shall be paid an amount equal to 100% of such employee's accumulated, unused sick pay as of the effective date of such resignation.

No payment for accumulated sick pay shall be made to any employee who is terminated by the Employer or who leaves without giving the required two (2) weeks advance notice of such resignation.

## ARTICLE 21 - LEAVES OF ABSENCE AND MILITARY SERVICE

1.     Employees with one or more years of continuous service may be granted a leave of absence without pay for a period of (90) calendar days or less without loss of seniority provided a written application is submitted to the Employer setting forth a good cause for the request. Such request shall not be unreasonably denied. Any extension of such leave shall be at the discretion of the Employer and shall cause the employee to

reduce his/her seniority by the amount of days of the extension, unless the leave or extension is required by law.

2.      Employees with not less than six (6) months of current continuous service shall be eligible for leave of absence for illness (including pregnancy) or injury for a period of 12 months or the employee's length of service when the absence began, whichever is shorter (unless a longer period is required by law). Such leave shall begin when the employee is no longer able to perform the required work and shall end when the employee is again able to perform the required work. The Employer may require medical certification of the employee's inability to perform the work and/or the employee's ability to return to work.

3.      If an employee covered by this Agreement shall be called for active duty in the Army, Navy, Marine Corps, or any other branch of the United States military service, their rights to their job, upon return, shall be served in accordance with the recognized law of the land on this subject.

4.      The provisions of the Agreement shall be interpreted and applied in conformance with all applicable requirements of the Federal Family and Medical Leave Act ("FMLA"). To the extent any provision of this Agreement or any policy or practice of the Employer is contrary to the FMLA, such provision, policy, or practice shall be deemed modified so as to conform to the requirements of the FMLA. In the event an employee takes a leave of absence for which he/she is eligible pursuant to the FMLA and not pursuant to a specific provision of the Agreement, the employee must first exhaust all unused vacation time towards the twelve (12) weeks FMLA period.

## ARTICLE 22 - SENIORITY

1.      Newly hired employees shall be probationary employees until they have completed sixty (60) calendar days of continuous service with the Employer. Upon notification to the employee and the Union, there may be an extension of this probationary period for up to an additional thirty (30) calendar days to enable the Employer to properly train, in service and evaluate the employee if necessary. After an employee has completed the probationary period, their seniority shall date from the beginning of the probationary period. Grievances shall not be presented by or on behalf of any probationary employee for any reason except an alleged improper payment of wages or applicable economic benefit.

2.      Seniority shall be defined by the length of continuous employment with the Employer and with predecessor operators at the same location. Seniority and employment shall be lost only as follows:

(1)     Discharge for just cause;

(2)     Voluntary quit;

(3)     Layoff for a period of 12 months or the employee's length of service when the absence began, whichever is shorter;

(4)     Failure to return to work upon expiration of an authorized leave of absence without the permission of the Employer;

(5)     Failure to report after a layoff within five (5) work days after the Employer sends to the last known address, by registered or certified mail, a written notification to return to work; or within three (3) work days after the Employer sends to the last known address, by telegram, a written notification to return to work (with copies to the Union in each instance);

(6)     Absence for two (2) consecutive scheduled days without prior notification to the Employer unless an emergency prevented the employee from giving such notice.

3.      (a)     In the event of a layoff, the least senior employee in the affected job classification shall be laid off first, provided the remaining employees possess the necessary skill, experience, qualifications and work record to perform the available work. The laid off employee shall be given the opportunity to transfer to a vacant position on another shift or to displace a less senior employee on another shift in the same classification, or to displace the least senior employee in another classification, provided the laid off employee possesses the necessary skill, experience, qualifications and work record to perform the available work. Laid off employees who retain seniority, (including those employees who bump into another classification or transfer to another shift), shall be recalled from layoff in the reverse order in which they were laid off before any new employees are hired into the affected job classification.

(b)     When the Employer determines that a layoff is likely, the Employer shall provide at least five (5) days notice or five (5) days pay to the affected employees.

(c)     For layoffs anticipated to exceed thirty (30) consecutive calendar days, the Employer shall provide at least five (5) days notice or five (5) days pay to the employees and the Union, and, upon request, promptly meet with the Union to bargain over the impact of the layoff and to discuss reasonable alternatives but such discussion shall not delay the implementation of the layoff.

(d)     For layoffs anticipated to exceed thirty (30) consecutive calendar days (or for shorter periods if mutually agreed by the employer and the union), any employee

laid off shall be given the option of bumping a less senior employee in any other classification provided the laid off employee possesses the necessary skill, experience, qualifications and work record to perform the available work (all aides including rehab and CNA shall be considered in the same department provided they have the necessary certification.) Any employee laid off may apply for vacant positions in another department under the provisions of Section 5.

4.    When employees are transferred to another shift, the employee or employees with the least seniority shall be transferred, provided the employee or employees are able to perform the duties required.  An employee with greater seniority may be transferred if they had previously indicated their desire for such a transfer.


5.    In the event of a new job opening or a permanent vacancy that the Employer decides to fill, the Employer shall post the position for a period of five (5) days.  During such period the Employer may fill the position temporarily in any manner it chooses.  The posting shall include job title/ and/or classification, a summary of the job duties, the required or desired prerequisites and/or qualification, the possible hours and shift, and the rate of pay.  Any employee interested in being considered for the position may submit an application for the position to the Administrator or the Administrator's designee at any time.  Employees who apply for or bid on the position shall be considered in light of their seniority, skill, experience, qualifications, and work record.  Where the factors listed are relatively equal, the position shall be awarded to the most senior employee.  The employee awarded the position shall then be given a reasonable trial period of up to five (5) working days.  If the employee informs the Employer within two (2) working day in the new position of his/her desire not to continue in the new position, or does not successfully complete the five–day trial period, the employee shall be returned to his/her prior position.

### ARTICLE 23 - FUNERAL LEAVE

1.    In the event an employee's father, mother, brother, sister, father-in-law, mother-in-law, brother-in-law, sister-in-law, spouse, child, step-child, maternal or paternal grandparents dies, employees with more than sixty (60) days of employment will be entitled to three (3) days off with twenty four (24) hours of pay at their regular straight time rate provided employee attends funeral.


2.    In order to obtain payment in the event of a death, the employee may be required, if deemed appropriate by the Employer, to present evidence of the death and of the relationship of the deceased in form satisfactory to the Employer.


### ARTICLE 24 - FULL-TIME AND PART-TIME .EMPLOYEES

1.    Full-time employees are employees who work thirty (30) hours or more in any work week.

2.      Part-time employees are employees who work seventeen (17) hours or more, but less than thirty (30) hours in any work week.

3.      Casual employees are employees who work less than seventeen (17) hours in any work week, and are not eligible to participate in the Health and Welfare or Pension Funds within the meaning of this Agreement.

4.      Part-time and Casual employees shall be paid at the same wage rate as other employees in the same classification and shall receive prorated fringe benefits such as sick pay, vacation pay, holidays, death benefits, etc.

5.      All Part-time employees shall be given an opportunity to become Full-time employees as Full-time vacancies occur. Such requests shall be presented in writing to the Employer.

6. Immediately following the ratification of this Agreement, the Union and the Association will appoint a subcommittee to work with the advice of the Funds to review contribution rate methodology for Health and Welfare contributions affected by the full-time part-time definition.  Any changes made shall be by mutual agreement of the Association and the Union, and shall be prospective only, and shall be binding on all parties to this agreement.

## ARTICLE 25 - SAVINGS PROVISION

Should any part of this agreement or any provision contained herein be declared invalid by operation of law by a tribunal of competent jurisdiction, it shall be of no further force and effect, but such invalidation of a provision of this agreement shall not invalidate the remaining portions and they shall remain in full force and effect.  In such event, the Employer and the Union will at the request of either party herein, promptly enter into discussions relative to the particular provision(s).  Any agreement arising from such discussions shall be reduced to writing and signed by both parties.

## ARTICLE 26 - CREDIT UNION

All facilities will allow their employees to participate in a Credit Union, which, except for those facilities with existing Credit Unions, will be through Members Financial Services, a company representing several Credit Unions.  There will be no charge to the facility from either the Credit Union or Members Financial Services.
The procedure is as follows:

1.      A representative from Members Financial Services will contact each facility with information on the Credit Unions.

2.      The facility will decide on a Credit Union and the best time for the enrollment.

3.      Payroll stuffers and small signs will be provided to the facility announcing the new employee benefit, a Credit Union.

4.      Group meetings will be held at various times throughout the day and night, so that each employee will be able to attend one meeting during their normal shift. (max. 25 min.) Periodically, at the facility's request, but at least every six (6) months, steps 3-5 above will be repeated for any employees not yet in the Credit Union. The facility will have no administrative involvement other than payroll deducting the amounts requested by the employees and forwarding them to the Credit Union. The deposits can go to the Credit Union through the Auto Clearing House (ACH) or manually, provided they arrive at the Credit Union within three (3) days after pay-day.

## ARTICLE 27 - DURATION

This Agreement shall become effective as permitted by law, as of January 1, 2012, and shall continue in full force and effect to and including December 31, 2014. This Agreement shall be reopened effective October 1, 2013 for the purpose of negotiating wage increase and Health and Welfare contribution rates and benefits only, effective January 1, 2014.

## ARTICLE 28 - MISCELLANEOUS

1.      Each employee shall have a total of twenty (20) minutes of break time during each regularly scheduled shift, the time or times of each break to be determined by the Employer. Employees' personal cell phones or similar devices may only be used in the facility in designated break and lunch areas during their breaks and lunch periods.

2.      Foreign graduate nurses performing C.N.A. work shall be subject to the terms of this Agreement.

3.      Facilities currently providing uniforms without charge to employees as of the date of execution of this agreement shall maintain that practice for the duration of this agreement. An Employer who does not provide uniforms and who changes the uniform color shall provide two uniforms to each employee affected by the change.

4.      Union Representatives and Stewards shall treat management representatives with dignity, respect and civility at all times. Management representatives shall treat Union representatives and members of the bargaining unit with dignity, respect and civility at all times.

5. Employees shall not be disciplined for speaking a language other than English during breaks and lunches.

## ARTICLE 29 - COOPERATIVE LEGISLATIVE ACTION

The Employer agrees to grant up to three (3) employees at each facility covered by this agreement up to three (3) paid leave days per calendar year for the general purpose of lobbying, public action and advocacy to any state of federal government, legislature or congress on issues related to healthcare or nursing home funding and other beneficial legislation as agreed to by the Employer and the Union. The Union shall designate in writing to the employer the employees requesting such leave at least fourteen (14) calendar days in advance, unless mutually agreed upon. Leave requests shall consider the Employer's operational needs but shall not be unreasonably denied by the Employer. The Employer shall communicate promptly with the Union concerning any difficulties in granting leave requests. Employees on paid leave described
in this section shall receive their regular straight time rate of pay for their scheduled hours on that day. Such time shall not be counted for the purpose of overtime. All travel and meal expenses shall be the responsibility of the Union.

## ARTICLE 30 - COPE DEDUCTION

The Employer agrees to honor and to transmit to the union, SEIU Healthcare Illinois and Indiana COPE Fund contribution deductions from the employees who are members and who sign deduction authorization cards. The deductions shall be in the amounts and with the frequency specified on the political contribution deduction card. The deductions shall be remitted to the Union monthly. The Union agrees to indemnify, defend, and save the Employer harmless against any and all claims, suits, or other forms of liability arising out of the deduction of money for the COPE Fund from the employee's pay or from any other liability of any nature on account of the Employer's compliance with this Article. The Employer shall promptly notify the Union of any such claim, suit, or other such complaint.

## ARTICLE 31 - SEIU HEALTHCARE ILLINOIS & INDIANA AND AD HOC COMMITTEE QUARTERLY MEETING

1. SEIU Healthcare Illinois and Indiana and the Chairman of the Association Ad Hoc Committee shall meet, together with such designated representatives of the Union and other members of the Ad Hoc Committee and/or the Association as may care to attend, shall meet once each calendar quarter (or at such other mutually agreeable times) for the purpose of discussing any issues or subjects regarding the application and compliance with the collective bargaining agreement, legislative issues of mutual concern, or any other issue which may be of interest or concern to the members of the union and/or the members of the Association.

2.    The parties shall, not less than 14 calendar days prior to each meeting, identify and prepare an agenda of issues to be discussed.  However, nothing shall preclude either party from raising for discussion any issue of concern to its respective members.

3.    It is the intent and purpose of this procedure to produce a candid, forthright dialogue designed to enhance compliance with the terms of this Agreement as well as to encourage discussion and understanding of any workplace issues or concerns, including issues of respect, dignity, fair treatment, and enforcement of facility policies and procedures.  It is the further purpose that issues discussed, problems identified, and understandings arrived at will be communicated to the respective parties' representatives and memberships.

## ARTICLE 32 – PROMOTION OF A STABLE UNION–ASSOCIATION RELATIONSHIP

1. During the term of this agreement, the Union will make its best reasonable efforts to ensure that all contracts entered into with any nursing home provider located in H.S.A. districts 1, 6, 7, and 8 (Chicago, Suburban Cook County, the Collar Counties, and the Rockford area) contain a package of wage increases and fringe benefits which is comparable or better from the employee perspective to that contained in the IAHCF agreement (defined as a package of contractual wage increases and benefits, which have a cost to the employer comparable or greater on a per employee basis to that contained in the IAHCF agreement).  If the Union becomes aware of a situation where, despite its best reasonable efforts, the Union may not be able to obtain a contract which, considered as a whole, meets the above standard, it will contact the IAHCF through its Executive Director, to inform the Association of this situation.  The Union will further furnish such agreement's economic terms to the Association promptly following execution of the Agreement.  In addition, copies of all contracts, upon execution, will be sent to the IAHCF executive director.

2. During the term of this agreement, the Union and the Association agree to meet to discuss ways to positively promote a stable relationship between the Association and the Union, and to discuss ways to encourage nursing home providers to become and remain Association members.  Such measures may include, by way of example, (1) Association – Union sponsored informational seminars for the appropriate staff of Association member facilities regarding the procedures for Health and Welfare and Pension contributions, (2) Streamlined grievance adjustment procedures as may be mutually agreed between the parties, (3) Joint labor-management activities, and/or (4) Joint employee training programs, including joint management-employee training with the Federal Mediation and Conciliation Service. Except for the joint management-employee training with the Federal Mediation and Conciliation Service, such measures are included by way of example only, and there shall be no obligation on either party to agree to any specific measures.

3. Any facility bound to this agreement as of its execution date, or becoming a party to this agreement following its execution, shall remain bound by this agreement for its entire term through December 31, 2011, and may only withdraw from the Association effective January 1, 2012, by submitting timely notice as required by law prior to the commencement of the negotiation of the successor agreement to be effective January 1, 2012. In becoming party to this agreement, either on its execution or subsequently, all member facilities grant the authority to the Association to enter into modifications of this agreement as may be mutually agreed between the Association and the Union during its term, including but not limited to, the results of any wage and benefit reopeners which may be concluded by the Association and the Union during the term of this agreement.

4. In the event an Employer considers transferring a facility (or facilities) whether by sale, lease, assignment, subcontract or any other means whatsoever, the Employer shall encourage the transferee to hire the bargaining unit employees employed by Employer and to execute this Agreement. The Employer shall meet with the staff of the Union within forty-eight (48) hours of the transfer to facilitate an effective transition. Where possible, a representative of the transferee should be present at the meeting. The Employer shall also provide at least five (5) days notice to the employees or else be liable for five (5) days pay to any employees that are laid off or terminated due to the transfer during the first thirty (30) days following the transfer.

### Article 33 - Patient Care

1. The Employer and Union agree that quality patient care and an appropriate working environment require adequate staffing levels within all departments. Furthermore, the Employer acknowledges that it will make a good-faith effort to distribute workloads equitably among the employees in the same job classification within a department or operating unit, consistent with patient care, operational unit needs and the terms of the agreement.

2. The Employer shall staff each facility in accordance with staffing requirements set by state and federal law.

3. The parties are in agreement that full cooperation and understanding between the parties and a harmonious relationship will promote efficient performance and better patient care. The parties therefore recognize that matters relating to and affecting patient care, may arise, which may be appropriate to discuss between management and employees other than in a formal grievance process. To this end, a single Labor Management Patient Care Committee shall be created to review, discuss and suggest resolution on issues of mutual concern to the parties. The

committee will act as a liaison and may offer suggestions to resolve individual issues
that may be present at individual facilities. These suggestions would be non-binding
upon the parties.

4. Meetings will be held quarterly at a mutually agreed upon, member, nursing home,
   unless mutually agreed otherwise and shall not exceed two (2) hours in length
   unless jointly agreed upon. The Labor Management Patient Care Committee
   established in accordance with this article shall be comprised of no more than three
   (3) employer representatives and no more than (3) union representatives, all of
   whom are employees of members of the group of Association facilities. In addition,
   the parties may choose to invite up to one (1) union staff person and/or up to one
   (1) Employer bargaining representative to participate in the meetings. Such
   invitations shall be made know to the full committee at the time of scheduling the
   meeting. Each party shall name a spokesperson to coordinate committee activities.
   It is the intent of the parties that all meetings shall be conducted in a cooperative
   and professional manner with the aim of addressing matters in a constructive way.
   It is the intent of the parties that the committee will serve as a forum for discussing
   patient care issues that have been brought up between meetings by those they
   represent. The committee will not discuss disciplinary matters, pending grievances
   or issues relating to contract negotiations. Discussions in the Labor Management
   Patient Care Committee cannot be used as evidence in any grievance, arbitration or
   other proceeding. This paragraph shall not prevent an employee, the Union or the
   Employer from pursuing an otherwise grievable issue through Grievance and
   Arbitration provision in this agreement. The Committee will not issue opinion as to
   whether an issue is grievable or not.

5. Meetings shall be scheduled at least thirty (30) days in advance unless otherwise
   mutually agreed upon and the parties' spokespersons shall jointly develop a
   mutually agreed upon agenda for each meeting in advance, which shall be circulated
   among the Committee members a minimum of one (1) calendar week prior to a
   scheduled meeting. The Employer shall, unless in the case of a bona fide emergency,
   ensure that the Union participants on the Committee will be granted leave from
   duty in order to attend the meeting.

6. The Committee will accept written narrative from any employee that is signed and
   dated. Such narratives shall be circulated among the Committee members a
   minimum of one (1) calendar week prior to a scheduled meeting, along with that
   meeting's agenda, so that it may be considered properly.

7. When the committee reaches a suggested resolution of an issue, this suggested
   resolution will be reduced to writing and signed by the committee members. It is
   understood that no suggested resolution by the committee will alter or abridge the
   letter or the intent of this agreement.

8. Time spent by Committee members attending meetings of the Labor-Management Patient Care Committee shall be paid at the employee's base hourly rate and treated as non-worked hours for purposes of computing overtime.

For SEIU Healthcare Illinois & Indiana:

For the Illinois Association of Health Care Facilities:

_____

_____

Keith Kelleher

~~Floyd A Schlossberg~~Moshe Davis

## APPENDIX A

### WORK AND SAFETY RULES
### AND REGULATIONS
### ADDENDUM TO AGREEMENT
### ILLINOIS ASSOCIATION OF HEALTH CARE
### FACILITIES AND
### SEIU HEALTHCARE ILLINOIS AND INDIANA

These work and safety rules and regulations shall·be applicable to each facility and its employees in the bargaining unit.

It is essential to the successful operation of the facility's business and the welfare of its patients and employees that fairly established standards of discipline, health, safety, attendance, workmanship and honesty be maintained. Employees shall have an opportunity to sign formal warnings, acknowledging that such warning has been given and to comment on ·such warning. Disregard or violation of these rules and regulations, incapacity to meet such established standards or unauthorized disclosure of confidential facility matters will subject an employee to reprimand or discharge.

Nothing in these rules and regulations shall abrogate the employee's right, through the Union of which he is a member, to challenge a penalty through the regular grievance machinery. Rules and regulations herein contained are a part of the present Union contract.

It is agreed that the failure of an employee to follow the reasonable instructions of her/his supervisor constitutes possible just cause for disciplinary action up to and including discharge. Therefore, if any employee or group of employees feels that any rule, policy, instruction or order of any supervisor or manager is improper, the employee or group of employees shall comply with the rule, policy, instruction or order (unless such order or instruction is clearly contrary to law, or if the employee has an objective basis for

a

1.38

believing that to do so will result in an abnormal risk of serious injury to the employee or to a resident), with the understanding that the employee or group of employees may thereafter file a grievance under the grievance procedure.

Accumulation of five (5) violations (excluding those for which counseling is provided) in any twelve (12) month period shall be grounds for discharge.

No violation occurring more than twelve (12) months prior to any subsequent violation shall be considered in determining the discipline for the subsequent violation.

The Employer shall issue discipline to the employee within seven (7) days of knowledge of the events constituting the offense.

Unpaid suspensions for the purpose of investigating possible discipline shall not exceed three (3) working days; if the suspended employee is not returned to work by the fourth day, the remaining days on suspension shall be paid unless there are circumstances that make an additional delay unpreventable which shall not exceed an additional four (4) days provided notice is given for the additional days to the Union by the Employer. This 3-day restriction is not applicable in cases where outside agencies are otherwise conducting independent investigations.

For the purpose of Rules 37-50, the "employment year" begins on the date of hire and on an employee's anniversary date thereafter.

1.     Stealing from resident, visitor, other employee or facility.

1st offense – Discharge

b

1.39

2.      Reporting for work while under the influence of alcohol or while suffering from its effects, or while under the influence of controlled drugs or narcotics (unless such are being taken pursuant to a physician's written prescription).

      1st offense – Discharge

3.      Possession of, or drinking of liquor or any alcoholic beverages, or possession of or using any controlled drugs or narcotics (unless such are being taken pursuant to a physician's written prescription) on company property or company time.

      1st offense – Discharge

4.      No firearms, knives or weapons of any type shall be brought into the facility or onto facility property. (Pepper spray, pocket knives or other similar devices, carried for self-defense in coming to and from work, shall not be considered a weapon within the meaning of this section, so long as the employee maintains proper security over these items.)

      1st offense – Discharge

5.      Failure of an employee to follow the reasonable instructions of her/his supervisor.

      1st offense – Discharge

6.      Willful destruction or damage of property belonging to facility or persons.

      1st offense – Discharge.

7.      Physical or verbal abuse, neglect, or attempting to injure residents or other person, including any other staff member, supervisor, or manager.

      1st offense – Discharge

8.      Intentionally falsifying employment or other facility records.

      1st offense – Discharge

c

1.40

9.      Verbal or written threat to injure or harm any other person including any

other staff member, supervisor, or manager.

         1st offense – Discharge

10.     Failure to verbally report an incident involving a resident or staff.  Reports

may be confirmed in writing in appropriate log.

         1st offense – Discharge

11.     Punch other person's time card or asking another to punch your time card.

         1st offense – Discharge

12.     Discourteous behavior to any resident or visitor.

         1st offense – Up to three (3) consecutive days suspension, at discretion
         of Employer.

         2nd offense - Discharge

13.     Absent for two (2) consecutive working days without notifying the facility,

unless an emergency prevented the employee from giving notice.

         1st offense — Automatic Resignation

14.     Unauthorized use of cameras or recording devices.

         1st offense — Discharge

15.     Requesting to borrow money or asking for tips, loans, gratuities or gifts from

any resident or member of a resident's family.

         1st offense — Discharge.

16.     Revealing to any person, other than an employee working with the resident,

any confidential information concerning any resident.

         1st offense — Discharge

17.     Sleeping while on duty.

d

1.41

1st offense — Discharge

18.     Failure to follow parking lot regulations, if any.

1st offense — Informal Warning

2nd offense — Formal Warning

3rd offense — Loss of Privilege

19.     No employee shall visit other parts of the facility or leave the facility other than in the line of duty or with the permission of the supervisor.  When leaving the facility, the employee shall notify the supervisor and shall punch out.

1st offense — Formal Warning

2nd offense — Up to three (3) consecutive days suspension, at discretion of Employer

3rd offense — Discharge

20.     Gambling on facility premises.

1st offense — Formal Warning

2nd offense — Up to three (3) consecutive days suspension, at discretion of Employer

3rd offense — Discharge

21.     Employees not meeting health test requirements will not be permitted to work until the test is satisfactorily completed.  If the test is not satisfactorily completed within seven (7) days of the required date, the employee will be discharged.

22.     Solicitation of any kind, distribution or circulation of literature, petitions and written or printed matter of any description in the facility shall not be done by an employee during his or her working time or in patient areas without the prior written consent of the Administrator.

1st offense – Warning

e

1.42

2nd offense – Formal Warning

3rd offense – Up to three (3) consecutive days suspension, at discretion of Employer

4th offense – Discharge

23.    Unauthorized posting, removal or tampering with bulleting board items.

1st offense – Formal Warning

2nd offense – Up to three (3) consecutive days suspension, at discretion of Employer

3rd offense – Discharge

24.    Playing of radios, etc., loudly so as to disturb residents or others.

1st offense – Informal Warning

2nd offense – Formal Warning

3rd offense – One (1) day suspension, at the discretions of Employer

4th offense - Discharge

25.    Unauthorized use of cell phones, or similar devices, telephone or other equipment for personal needs.

1st offense – Formal Warning

2nd offense – Up to three (3) consecutive days suspension, at discretion of Employer

3rd offense – Discharge

26.    Loitering in work area when not scheduled to work.

1st offense – Informal Warning

2nd offense – Formal Warning

3rd offense – Up to three (3) consecutive days suspension, at discretion of Employer

4th offense – Discharge

27.    Failure to follow dress code and good hygiene.

f

1st offense — Informal Warning

2nd offense — Sent home for rest of day without pay

28.    No employee shall smoke in unauthorized areas.

1st offense — Formal Warning

2nd offense — Up to three (3) consecutive days suspension, at discretion of Employer

3rd offense — Discharge

29.    No work shall be performed in an unsafe manner.

1st offense — Informal Warning

2nd offense — Formal Warning

3rd offense — Up to three (3) consecutive days suspension, at discretion of Employer

4th offense — Discharge

30.    Failure to notify Personnel of address or telephone number change which the

facility shall keep confidential.

1st offense — Informal Warning

2nd offense — Formal Warning

3rd offense — Up to three (3) consecutive days suspension, at discretion of Employer

4th offense — Discharge

31.    Not in assigned work place at starting and quitting time.

1st offense — Informal Warning

2nd offense — Formal Warning

3rd offense — Up to three (3) consecutive days suspension, at discretion of Employer

4th offense — Discharge

32.    Failure to punch in or out, or obtain supervisor's approval during same shift.

g

1st offense — Informal Warning

2nd offense — Formal Warning

3rd offense — Up to three (3) consecutive days suspension, at discretion of Employer

4th offense — Discharge

33.  (a)  Swearing, obscene language or horseplay.

1st offense — Formal Warning

2nd offense — Up to three (3) consecutive days suspension, at the discretion of Employer

3rd offense — Discharge

(b)  Sexual, racial or ethnic harassment of any resident, family member of

a resident, staff member, supervisor or member of management.

1st offense — Formal Warning or discharge, depending on the circumstances.

2nd offense — Discharge

(c)  Maintaining or attempting to maintain a relationship (whether or not

consensual) with a resident that is sexual or romantic in nature unless the resident is the

employee's spouse.

1st offense — Discharge

34.  In unassigned area during working hours without permission other than in

the line of duty.

1st offense — Informal Warning

2nd offense — Formal Warning

3rd offense — Up to three (3) consecutive days suspension, at discretion of Employer

4th offense — Discharge

h

1.45

35. Overstaying rest or lunch period.

   1st offense — Informal Warning

   2nd offense — Formal Warning

   3rd offense — Up to three (3) consecutive days - suspension, at discretion of Employer

   4th offense — Discharge

36. For issues which are not addressed in this addendum, in addition to the work and safety rules and regulations set forth above, each facility shall have the right to promulgate, modify and enforce any other reasonable rule, policy or regulation regarding the work, safety, attendance, dress, conduct and performance of its employees and the care of its residents, including but not limited to rules regarding drug and alcohol use and testing. Such rules shall be published and a copy of which shall be maintained for inspection by employees with a copy to the Union. The penalties for violations of any such rule or policy shall be consistent with the concepts of progressive discipline and just cause, with due recognition that some offenses are serious enough to warrant discharge with or without prior warning.

## ABSENTEEISM AND
## TARDINESS STANDARDS

### Absence — Unexcused

37. One day absence in an employment year.

   Informal Warning with counseling

38. One additional day of absence in the same employment year.

   Formal Warning

39. One additional day of absence in the same employment year.

i

1.46

Up to 3 consecutive days suspension, at discretion of Employer

40.     One additional day of absence in the same employment year.

        Discharge

## An Unexcused Absence

When the employee has not asked for, and/or not received prior permission from his/her department head, to be absent for any reason except illness, or has not called in to report an absence, or is tardy three (3) hours or more.

## Absence Excused (Illness)

41.     Four episodes in any employment year.

        Counseling

42.     One additional episode in the same employment year.

        Informal Warning

43.     One additional episode in the same employment year.

        Formal Warning.

44.     One additional episode in the same employment year.

        Up to 3 consecutive days suspension, at discretion of Employer

45.     On additional episode in the same employment year.

        Discharge

        **An episode of illness** – the number of days needed for the illness or injury to run its course so the employee may safely return to work. If the episode will be more than ten (10) days, the employee shall request a leave of absence.

        **An Excused Absence** – when the cause of the absence was not within the control of the employee, and is independently verifiable.

        **A prearranged absence** – (department head permission) for approved reasons, such as vacations, compensated time, jury duty, etc., shall not be grounds for disciplinary action.

        **TARDINESS – Punching in up to three (3) hours after the start of a shift.**

j

46. Tardy twice in five (5) payroll periods.

    Counseling

47. Tardy one additional time in five (5) payroll periods.

    Informal Warning

48. Tardy one additional time in the same five (5) payroll periods.

    Formal Warning

49. Tardy one additional time in the same five (5) payroll periods.

    Up to 3 consecutive days suspension, at discretion of Employer.

50. Tardy one additional time in the same five (5) payroll periods.

    Discharge

**DOCKING**

    6-15 minutes late:  15 minutes of docked time

    16+ minutes late:  Docked in 15 minute increments to next quarter hour

k

## APPENDIX B

Following the ratification of this Agreement, and no later than January 1, 2006, upon request by either party, the Union and the Employer will meet to review the job titles which are represented by the Union in that facility, to establish a list of such represented titles by facility, and to discuss whether any non-represented titles share a community of interest with the represented employees at that facility.

1

1.49

## APPENDIX C

These rules of conduct shall be binding upon the Union and the Employers (as defined in Article 2, Section 6) in the event of any organizing drive by the Union to organize any service and maintenance employees in any unorganized or newly-acquired facility of any such Employer.

Nothing contained in these rules of conduct is intended to violate any federal or state law or rule or regulation made pursuant thereto. If any part of this appendix is found to be unlawful, then that specific part shall be considered null and void and parties shall within 30 days of such determination meet to determine the impact of such determination and attempt to negotiate a valid replacement provision which reflects the intent of the original provision as closely as legally allowed.

Section 1: <u>Notice and Unit:</u>

(a)    The Union shall serve written notice on the Employer not less than 24 hours prior to commencement of any organizing at the Employer. The notice shall identify the unit of the Employer's employees that the Union is seeking to represent.

(b)    Any organizing drive conducted by the Union under this Appendix C shall be for a Service and Maintenance unit containing all full-time and regular part-time Certified Nursing Assistants (CNAs), Dietary Employees, Housekeeping Employee, Laundry Employees, Activity Aides, Rehab Aides, and Psychosocial Aides, but excluding licensed practical and registered nurses, confidential employees, casual employees, guards, managers and supervisors as defined in the National Labor Relations Act.

m

(c)     As soon as possible following the commencement of the organizing drive, the Union and the Employer shall meet to discuss the inclusion or exclusion of other titles commonly included by the National Labor Relations Board in nursing home service and maintenance units, such as (by way of example but not limitation): Receptionist, Unit/ward clerk, titles specific to that facility, etc.  The parties shall also meet to define those individuals affected by the statutory exclusions (supervisors, managers, guards, casual and confidential employees as defined in the Act).

(d)     Any discussions regarding the inclusion or exclusion of such titles shall not delay the compliance by either party with the obligations under this Agreement.  In the event the parties are unable to mutually agree on the inclusion or exclusion of these titles, the unit shall be limited to that described in subparagraph (b) above.

Section 2:  <u>Duration and Applicability</u>

These rules of conduct shall apply only with respect to the employees in the unit and facility identified in the notice required by section 1 above; shall apply beginning on the date when the Union provides said notice, and shall continue only until the earliest of the following dates:

a)  Sixty days of serving the above notice under section 1, unless the union has filed a petition within that sixty day period.

b)  The date when the Union withdraws its petition for such an election

c)  The date of such an election.

n

1.51

Notwithstanding the above timeline, and in return for the Union's commitment to give notice on the commencement of the organizing drive, the Employer agrees that it shall not attempt to prevent the union from commencing an organizing drive by campaigning against unionization in advance of any organizing drives.

Section 3: Joint Statement

Within 72 hours after the Employer's receipt of the foregoing notice from the Union, the Employer shall post a statement jointly signed by the Union and the Employer, the substance of which shall be as set forth in Exhibit A attached hereto and made a part hereof, addressed to the employees in the identified unit.

Section 4: List

As soon as possible, but no later than four (4) working days after the union serves the notice in Section 1, the Employer shall provide the union with a list of employees in the affected unit, their job title, and their home address. The list shall be for the unit described in 1b above unless the parties mutually agree to add other titles. The union shall promptly notify the Employer if it believes the list is inaccurate or incomplete, and the Employer shall promptly make reasonable efforts to correct any deficiencies.

Section 5: Access

As soon as practicable, but no more than four (4) working days after the Employer receives a request for access under Section 1 above, the Employer shall allow access to suitable employee break areas, to be agreed upon by the Union and the Employer, for Union representatives/organizers to meet with employees in the identified unit. The number of Union representatives/organizers meeting in the meeting area at any one time

o

shall be limited to three, unless special circumstances (such as multiple languages spoken by employees) require additional representatives.

The aforesaid break areas shall be available to the Union's officers, organizers and stewards at reasonable times; and shall be the location(s) where the affected employees normally take their breaks (including smoking areas). To the extent feasible the location(s) shall be located away from patient care areas; and supervisors and managers shall not be present in these areas when union representatives are speaking to employees, nor shall supervisors and managers engage in surveillance of the entrance and exit of said location(s). Employees in the identified unit shall be permitted access to the break location(s) during their non-working time.

Additionally, the union's officers, organizers, and stewards shall be permitted access to facility parking lots, provided they limit their communications to employees in the affected unit and do not interfere with the flow of traffic or cause employees to be late for work.

At all times, union representatives shall limit their communication to the members of the identified unit, except to the extent necessary to determine the identity of an employee and whether such employee is a member of the unit.

Section 6: Petition for Election or Request for Recognition

Within 60 days after serving the notice provided in Section 1, the Union shall either (1) file for an NLRB election with the showing of interest required by the NLRB, or (2) make a request for voluntary recognition pursuant to a majority card check, or (3) inform the employer that it has terminated its organizing drive. The employer shall be under no

p

1.53

obligation to conduct a card check, but in the event the employer does so, such card check shall be conducted within three (3) working days of the union's request. If the union's request for card check is denied, the union may proceed to file with the NLRB.

If the Union does not file for an NLRB election or request card check recognition, or does not promptly file for an NLRB election following the employer's denial of card check recognition, or if the Union files a petition and then withdraws it, the Union shall be precluded for a period of one year from seeking to represent employees in the identified unit. The one-year period shall begin from the earliest of the following dates: if no petition has been filed, the date when the Union notifies the Employer that it is no longer seeking to represent the identified unit, or the date when the sixty day period elapses, or the date when the Union withdraws a petition that it has filed within the sixty-day period.

## Section 7: Employee Freedom of Choice

Employees have the right to choose whether or not to be represented by the Union and to make that decision in an atmosphere free of harassment, coercion, intimidation, promises or threats by either the Employer or the Union.

## Section 8: No Disruption or Interference

All activities subject to these provisions shall be carried out in a manner so as to not disrupt patient care or otherwise interfere with the operations of the Employer, including the work of any employee.

## Section 9: Neutrality

q

The Employer shall remain neutral on the question of whether employees of the affected facility should choose to be represented by the Union. The Employer shall take all reasonable steps to insure that its owners, managers, supervisors, and other agents remain neutral on this question and do not attempt to influence employees' choice in any manner. The Employer shall instruct its owners, managers, supervisors and other agents to refrain from initiating or participating in conversations with employees in the proposed bargaining unit about the Union or Union representation. If an employee in the proposed bargaining unit asks an owner, manager, supervisor or agent a question about the Union or Union representation, the owner, manager, supervisor or other agent may respond factually only to the question asked and tell the employee that the Employer is neutral on the question of Union representation, that the choice of whether the employee wants to be represented by the Union is for the employee to make and that the Employer will honor that decision and bargain in good faith with the Union if the majority of the employees in the bargaining unit sought select the Union as their bargaining representative. Notwithstanding these provisions, the Employer may correct any factual errors by the union by written communication subject to the provisions of Section 10 below.

Section 10:  Pre-approval of Materials

Neither the Union nor the Employer shall publish, distribute or disseminate any campaign flyers, leaflets, letters, memoranda, notices, other written materials, or any audio, video or electronic media relating to the campaign without the prior approval of the other's special representative designated for resolving disputes pursuant to section 16. In the event of any unresolved dispute regarding such communication, either party may submit

r

the issue to the Arbitrator, pending whose ruling the communication may not be distributed. The Arbitrator's authority with respect to any dispute concerning a proposed communication shall be limited to determining whether and how the content of the proposed communication is inconsistent with these rules of conduct, and prohibiting its issuance to the extent that it is inconsistent.

Section 11:  Union Communications

The Union's organizing campaign (oral and written) shall be positive and factual, and shall not disparage either the motive or mission of the Employer and/or their representatives (e.g., officers, managers and supervisors) and/or any related entity or any representatives thereof.  The Union may convey its position fairly, and may provide employees with factual information to support an informed decision.

Section 12.  Employer Meetings

The Employer shall not hold any one-on-one or group paid time meetings a subject of which is representation by the union.

Section 13:  Correction of Inaccurate Statements

Nothing contained in this Agreement shall be construed as limiting either the Union's or the Employer's right to correct any inaccurate statements made by the other during the period covered by these rules of conduct, provided that the corrections are made in a manner consistent with Sections 9-12 above.

Section 14:  Consultants

S

1.56

Neither the Union nor an Employer shall use consultants or other representatives or surrogates to engage in activities inconsistent with these rules of conduct. The Employer shall not sponsor or encourage any group of employees who advocate against unionization.

Section 15: Election Procedure

Elections pursuant to these rules of conduct shall be conducted by secret ballot supervised by the National Labor Relations Board and shall be governed by the Board's rules and regulations and by the procedures set forth herein.

The parties shall attempt to resolve all issues regarding unit definition prior to the filing of any petition with the Board, but this shall not require the union to delay its filing once a showing of interest has been obtained. The definition of the unit shall be as set forth in Section 1, and in the interest of expediting the process, the parties agree not to insist on the inclusion of any titles other than those set forth in 1b above.

The Union and the Employer shall enter into a stipulated election agreement providing for an election to be held within 14 days of the filing of the petition, or as soon as possible beyond 14 days.

In the event of any dispute regarding the statutory exclusions, the parties agree that those employees will be allowed to vote subject to challenge, provided the total number of employees in dispute is less than 10% of the combined disputed and undisputed employees, with ultimate disposition of the issue deferred until after the election, provided that they do not meet or exceed the 10% limitation.

Section 16. Enforcement/Arbitrator

1.57

As soon as practicable after the commencement of the organizing drive, the Union and the Employer shall (A) each designate a special representative responsible for compliance and dispute resolution with respect to organizing under this provision; and (B) select an Arbitrator (or request the designation of an arbitrator under the expedited procedures of the American Arbitration Association or FMCS) who shall be authorized to resolve disputes in accordance with this Article. The Union and the Employer shall equally share the costs and expenses of the Arbitrator.

Within 24 hours after the special representatives of the Union and the Employer have been designated, they shall hold an initial conference among themselves to discuss the provisions of this Appendix.

Except as set forth in this Section 16, the Arbitrator shall have sole authority to hear any case and award an appropriate remedy concerning any dispute between the Union and the Employer relating to the interpretation or application of this Appendix; and any claim that either party did not comply with these rules of conduct. In addition:

(a) in cases where the Employer allegedly has discharged, disciplined or retaliated against an employee, the Arbitrator shall only have the authority to determine whether the Employer acted in reprisal for the employee's protected concerted activity in violation of the NLRA and, if the claim is found to have merit, to award a remedy available under the NLRA.

(b) in cases where it is alleged that either the union or the Employer violated the rules of conduct set forth in this agreement, to the extent that such conduct affected the outcome of the election and the arbitrator so finds, then the party violating the

u                                                                              1.58

rules of conduct shall join in a stipulation setting aside the results of the election and providing for a re-run election, providing that the objecting party also filed timely objections with the NLRB. However, if the Arbitrator does not find that the alleged violation(s) of the rules of conduct affected the outcome of the election, then the objecting party shall withdraw its objections filed with the NLRB. However, alleged objectionable conduct not subject to this Agreement and any other pre-election and post-election conduct, including resolution of disputes over challenged ballots shall be within the exclusive jurisdiction of the NLRB upon the timely filing of objections and/or challenges with the NLRB.

(c) In no event shall the Arbitrator have the authority to compel recognition of the Union or issue a bargaining order.

## Section 17. Dispute Resolution

Disputes between the Union and the Employer shall first be addressed by their special representatives. If the special representatives are unable to resolve the dispute then they shall submit the issue to the Arbitrator within twenty-four (24) hours after the dispute first arose. The Arbitrator shall issue a determination within the next seventy-two hours. In the event of any disputes within 5 days of the scheduled election date, the Arbitrator shall issue a determination within 24 hours. If necessary to meet these timelines, the Arbitrator may direct the parties to submit their evidence and any position statements by facsimile, and may hear testimony via telephone.

The foregoing time limitations shall not apply with respect to sections 16(a) – (alleged retaliation against an employee) and sections 16 (b) (objections to the election),

v

but such cases shall nonetheless be expedited, and the arbitrator shall be directed to take all appropriate measures to expedite the arbitration process, including but not limited to, limiting the number of employer or employee witnesses, limiting the scope of the hearing, limiting the submission of briefs and/or ruling on the basis of brief written submissions in lieu of hearings and/or ruling on the basis of telephone conferences in lieu of hearings. The intent of the arbitration process shall be to obtain a ruling as quickly as possible on the issue in dispute in order to allow the process to continue without delay. The arbitrator's decision within the limits of the arbitrator's authority shall be final and binding.

Section 18: Limitations

The provision of this appendix shall not apply:

a) with respect to a unit other than a service and maintenance unit

b) with respect to any unit that would be inappropriate for collective bargaining or representation by the Union under the NLRA

c) to the employer in its conduct toward any labor organization other than SEIU Healthcare Illinois and Indiana

W

1.60

## EXHIBIT A

To [**Unit**] Employees of [**Employer**]:

SEIU Healthcare Illinois and Indiana is seeking to represent you for purposes of collective bargaining. SEIU Healthcare Illinois and Indiana and **Employer** have jointly prepared this letter and the accompanying information sheet in the shared belief that you should understand the nature of the relationship between [**Employer**] and SEIU, your rights under the circumstances and the process that will be followed as the Union seeks to gain your support.

[**Employer**] is owned by owners who also own homes represented by SEIU Healthcare Illinois and Indiana. SEIU Healthcare Illinois and Indiana and the nursing home owners represented in the Illinois Association of Health Care Facilities are committed to working together to maintain and improve the ability of nursing homes to provide quality health care through joint labor-management efforts; to insure appropriate funding and resources for health care through joint legislative work; and other joint ventures to promote quality care.

The Association and its members, including [**Employer**], also recognize that labor strife has a disruptive effect on these joint efforts. Accordingly, [**Employer**] and SEIU have agreed to the additional procedures and rules of conduct described in the accompanying information sheet in order to help you make an informed decision on this important issue in an atmosphere that supports your freedom of choice.

x

1.61

**[Employer]** will not tell you to vote against representation by the Union, and believes that each of you must make your own decision based upon factual information that supports an informed decision. **[Employer]** will remain neutral on the issue of unionization, in other words, **[Employer]** and its supervisors will not try to influence your decision.

We encourage you to read the attached information sheet as it contains important information about your rights.

Sincerely yours,                    Sincerely yours,

INFORMATION SHEET

Under federal law, whether the employees shall be represented by SEIU Healthcare

Illinois and Indiana will be determined by a secret-ballot election conducted by the

National Labor Relations Board ("NLRB"), an agency of the U.S. government. Before the

NLRB will conduct an election, SEIU Healthcare Illinois and Indiana must demonstrate that

at least 30% of employees desire union representation. Alternately, where a majority of

employees sign up for union representation, the employer may agree to waive the election

and recognize the union on the basis of a majority having signed up.

SEIU Healthcare Illinois and Indiana is or will be asking employees to sign

authorization cards as a way to demonstrate such support.

The NLRB will not conduct an election unless the union has a sufficient number of

signed cards. Prior to the election, it will be determined which employees are eligible to

vote; however, the majority of those who actually vote will determine the result of the

election. In other words, 50% + 1 of the employees who actually cast ballots will determine

whether or not SEIU Healthcare Illinois and Indiana shall represent all of the eligible

employees.

Each employee has the right to participate or refrain from participating in union

activities, including the right to sign or not to sign union authorization cards. [**Employer**]

and SEIU Healthcare Illinois and Indiana support the freedom of workers to join a union, as

well as their right to choose not to do so. [**Employer**] and SEIU Healthcare Illinois and

Indiana agree that, when employees are making such an important decision, it is essential

z

1.63

that they have access to accurate and factual information about the organization that is seeking to represent them, and about what it means to be represented by a union.

Employees have the right to distribute literature concerning support for or against union representation on non-working time, in non-patient care areas such as break rooms, cafeteria, parking lots, smoking areas and other places outside the facility. Employees may talk about whether or not they want to be represented by a union and workplace issues including wage rates, disciplinary system, employer policies and rules and working conditions in any area under the same terms applicable to any other private conversation between employees.

In addition to the above, [**Employer**] and SEIU Healthcare Illinois and Indiana have agreed to the following rules of conduct governing the union's organizing:

aa

1.64

## ORGANIZING RULES OF CONDUCT

**Freedom of Choice**. Employees have the right to choose whether or not to be represented by the Union, and to make that decision in an atmosphere free of harassment, coercion, intimidation, promises or threats by either the Employer or the Union.

**Access**. The Employer shall allow access to the employee break areas (including smoking break areas) for Union representatives to meet with employees. Supervisors and managers shall not be present in these areas when Union representatives are speaking to employees, nor shall supervisors and managers engage in surveillance of the entrance and exit to these locations. Employees in the identified unit shall be permitted access to the break location(s) during their non-working time.

The Employer shall also allow access to the parking lots for Union representatives to speak with employees, so long as the Union representatives do not cause the employees to be late for work.

Once the Union begins its organizing drive, the Employer will furnish the Union with a list of the names, addresses and job classifications of all eligible employees.

**No Disruption or Interference**. All organizational activities by the Union, including but not limited to the Union's activities in the employee break room or in the meeting room shall be carried out in a manner so as to not disrupt resident care or otherwise interfere with the operations of the Employer or the work of any employee.

**Union Campaign,** The Union's organizing campaign (oral and written) shall be positive and factual, and shall not disparage either the motive or mission of the Employer and/or their representatives (*e.g.*, officers, managers and supervisors) and/or any related entity or any representatives thereof. The Union may convey its position fairly, and may provide employees with factual information to support an informed decision.

**Employer Neutrality.** The Employer shall remain neutral on the question of whether employees should choose to be represented by the Union. The Employer shall take all reasonable steps to insure that its owners, managers, supervisors or other agents remain neutral on this question and do not attempt to influence employees' choice in any manner. The Employer shall instruct its owners, managers, supervisors or other agents not to initiate or participate in conversations with employees in the proposed unit about the Union or Union representation. If an employee in the proposed unit asks an owner, manager, supervisor or agent a question about the Union or Union representation, the owner, manager, supervisor or other agent may respond factually only to the question asked and tell the employee that the Employer is neutral on the question of Union representation, that the choice of whether the employee wants to be represented by the Union is for the employee to make and that the Employer will honor that decision and

bb

bargain in good faith with the Union if the majority of the employees in the bargaining unit sought select the Union as their bargaining representative.

**Meetings.** The Employer shall not discourage employees from attending Union meetings and shall not discourage employees from accepting or reading any material distributed by the Union. The Employer shall not discourage employees from meeting with Union representatives in the employee's home. The Employer shall not hold any one-on-one or group paid time meetings a subject of which is representation by the Union.

**Other Representatives.** Neither the Union nor the Employer shall use consultants or other representatives to engage in activities inconsistent with these rules of conduct. The Employer shall not sponsor or encourage any group of employees who advocate against unionization.

**Recognition Procedure.** Elections will be conducted by secret ballot supervised by the National Labor Relations Board and governed by the Board's rules and regulations. If a majority of eligible employees sign up for the union, the Employer may agree to recognize the union without an election.

**Negotiations.** SEIU Healthcare Illinois and Indiana and the Illinois Association of Health Care Facilities have negotiated a contract which covers more than 100 other nursing homes. If a majority of employees decide to join the Union by signing cards or voting for Union representation in an election, employees at this facility will be covered under that Union contract except that either the Employer or the Union may request negotiations for a side letter to make changes or additions to that contract because of different conditions at this facility.

## **Letter of Agreement and Understanding**

The Union and the Association agree that the Association's withdrawn proposal regarding past practice in Article 15, Section 4, will not be introduced or used by either party in any proceeding, and the making and withdrawal of this proposal will be without precedent.


For the Union                                          For the Association


_____                        _____

dd

1.67

## **Letter of Agreement and Understanding Regarding Organizing by Other Unions**

In the event another labor organization begins a competing organizing drive at a facility in which SEIU Healthcare Illinois and Indiana is already conducting an organizing drive pursuant to Appendix C to the extent required by law and only to the extent required by law, the Employer will extend the provisions of this agreement to the competing labor organization where the other union is willing to abide by the same conditions as those accepted by SEIU Healthcare Illinois and Indiana.

During the term of the underlying collective bargaining agreement, no Employer subject to this agreement shall grant voluntary recognition to any other labor organization for any group of employees subject to this Appendix.

In the event any other labor organization informs the Employer of its intent to organize employees subject to this Appendix, or otherwise commences an organizing drive prior to SEIU Healthcare Illinois and Indiana commencing an organizing drive, the Employer will promptly notify SEIU Healthcare Illinois and Indiana. The Employer shall not extend the provisions of this Appendix to any union in any covered facility, unless such union has complied with the Appendix in all its terms to the same extent required of SEIU Healthcare Illinois and Indiana. Where the other labor organization has complied to the same extent required of SEIU Healthcare Illinois and Indiana, the Employer shall be allowed to extend the provisions of this agreement to both SEIU Healthcare Illinois and Indiana and the other union, or terminate this agreement as applied to such facility for a period of one year. Such termination shall not invalidate the prohibition on voluntary recognition.

No Employer subject to this Agreement shall directly or indirectly solicit or encourage the organizing of covered facilities by another union, nor in any way encourage organizing by any other union for the purpose of interfering with the application of this agreement by SEIU Healthcare Illinois and Indiana.

FOR THE UNION                                             FOR THE ASSOCIATION


_____                    _____

ee

1.68

## **Letter of Agreement and Understanding Regarding Cooperation in the Political Process**

In return for the mutual agreements contained within the collective bargaining agreement and its appendices, the Union and the Employers covered by this agreement agree to work together politically on issues of shared concern in the interests of the industry, the employees, and quality resident care. Quarterly, or more frequently as requested by either the Employers or the Union and as required by political developments, industry and union leaders will meet to review legislative, budgetary, and regulatory issues and to identify those issues on which the Employers and Union can work in partnership, and to develop plans for joint work on such issues. Examples of such issues include: the level of federal and state funding for the Medicaid program in general and the nursing home industry in specific, the funding formulas for the nursing home industry, and ways to obtain appropriate funding for the costs of providing the wages and benefits required by the collective bargaining process.

FOR THE UNION                                    FOR THE ASSOCIATION


‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑            ‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑

ff

**Side Letter Regarding the Electronic Contribution Reporting and Electronic Payment.**

It is understood between the Union and the Association, that the Health and Welfare Fund and the Association are in the process of jointly developing an Electronic Contribution Reporting system for members of the Association. It is understood and agreed that any Association members choosing to participate in this Electronic Contribution Reporting system shall be eligible for a discount of $4 per month per applicable covered employee. By virtue of the Association's role in the development of these systems, only Association members in good standing will be eligible for this discount. Additionally, any Facility choosing to participate in the Electronic Contribution Reporting system which also transmits its payments by electronic means by the due date shall be eligible for a discount of $1 per month per applicable covered employee. Association members in good standing will be eligible to take advantage of both discounts.

For the Association:                                                            For the Union:

_____                                    _____

1.70

**Side letter Regarding Benefit Improvements to the Health and Welfare Benefits**

The parties agree to recommend the following changes in the Local 4 SEIU Health and Welfare Fund benefits to the Union and Employer Trustees. These changes shall require the approval of the Trustees, such approval shall take place prior to the ratification of the collective bargaining agreement, and approval of the changes herein by the Trustees shall be a condition of the ratification. These benefit changes shall be effective as of April 1, 2008, or as soon as operationally possible by the Fund following April 1, 2008:

- PPO Increase annual maximum for specialized examinations and treatments to $2000.
- HMO Extend the existing benefit to employee's family for specialized examinations and treatments.
- Prescription drugs: Increase percentage paid on non-formulary drugs to 60% and increase the annual maximum for all categories to $800.
- PPO – the following changes will be made to encourage early detection and prevention of serious health problems: (1) Annual physical for member, spouse, and children: Reduce co-pay to $5.00 and charges do not count toward the annual doctor's services benefit maximum. (2) Vaccines and immunizations will be increased to 100% coverage up to a maximum of $500 per dependent for the first 18 months after birth.


This Memorandum of Agreement is entered into February 28, 2008, and is subject to ratification as set forth above.

For the Association:                                                        For the Union:

_____                    _____

hh

1.71